John DOE, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 92–3732.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1994.

Decided April 3, 1995.

C. Steven Tomashefsky, Jerold S. Solovy, Adam L. Hoeflich (argued), Jenner & Block, Chicago, IL, for John Doe.

Richard H. Lloyd, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for U.S.

Before RIPPLE and MANION, Circuit Judges, and SKINNER, District Judge.[*]

MANION, Circuit Judge.

John Doe,[1] a prisoner at Marion federal penitentiary, pleaded guilty to one count of conspiracy to commit murder (18 U.S.C. §§ 1111 and 1117) for his involvement in the murder of a fellow inmate. For his crime, Doe was given a nineteen-year sentence, to be served concurrently with his current sentence. Doe raised no objections to his guilty plea at sentencing, nor did he file a direct appeal. Instead, over two years later, Doe filed a motion to vacate his sentence under 28 U.S.C. § 2255, challenging the voluntariness of his plea. He also claimed that the government had breached a promise that his guilty plea would not be taken into consideration by the Parole Commission in determining his eligibility for parole (the Parole Commission did just that when it increased his eligibility date over 100 months). The district court

---

[*] Hon. Walter Jay Skinner, District Judge for the District of Massachusetts, is sitting by designation.

1. On February 22, 1993, this court entered an order to the clerk to amend the docket to remove the defendant's actual name and replace it with the pseudonym "John Doe."

observed that Doe was aware of these challenges at the time of sentencing. The court nevertheless went on to address the merits of the petition and determined that they were lacking. On appeal, the government argues that Doe defaulted his claims. We agree and also find no cause or prejudice for the default. We therefore affirm the district court's dismissal of the petition.

## I.

Doe was incarcerated at the Marion federal penitentiary, where he was serving a twenty-five year sentence for a series of bank robberies committed in 1982 following his escape from a state prison. For this robbery sentence, the Parole Commission set Doe's offense severity rating at Category Six. The offense category rating is one of several factors used by the United States Parole Commission in determining the date on which an inmate may be considered eligible for parole. See 28 C.F.R. §§ 2.20 et seq. Based on this offense severity rating, coupled with other acts Doe committed either in prison or while on the run, the Parole Commission determined that Doe would have to serve between 78 to 100 months of his sentence before he would be eligible for parole.

While serving his sentence, Doe, on September 23, 1983, assisted members of the Aryan Brotherhood in the murder of another inmate. We have already discussed at some length the gruesome details of this murder in United States v. McKinney, 954 F.2d 471 (7th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992). Suffice it to say, Doe pinned the victim down in his cell bed while other members stabbed him to death.

Three years later, the government was still seeking solid evidence upon which to secure an indictment for the murder. At some point, the government determined that Doe had been involved in the murder and offered him a plea agreement in exchange for his cooperation. On August 11, 1986, Doe, who was represented by counsel, entered into a plea agreement with the United States (the "1986 agreement"), in which he agreed to plead guilty to one count of conspiracy to commit murder, and to cooperate with the

government by providing information and testimony. In exchange for Doe's cooperation, the government, in paragraph four of the 1986 agreement, agreed to "recommend that the Court impose a sentence of no more than 19 years imprisonment, to be served concurrently with that sentence which he is presently serving...." Appellant's Br. Appendix at 3, ¶4. The government further agreed to "recommend to the United States Parole Commission that [John Doe's] offense category remain at six (6)." Id. Finally, paragraph ten of the 1986 agreement stated that "the United States agrees that no testimony or other incriminating information given by [Doe], pursuant to the terms of this Plea Agreement, may be used directly against [Doe] in such subsequent criminal cases...." Appellant's Br. at 5, ¶10. Doe did not enter a plea at the time, however, so that the 1986 agreement was never embodied in a judgment. The government therefore had no obligation to carry out the terms of the 1986 agreement. Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

Following this, Doe was placed in the Witness Security Program (18 U.S.C. § 3521). Pursuant to the terms of the 1986 agreement, he testified before the grand jury regarding his involvement in the 1983 murder. As a result of Doe's testimony, the government obtained a two-count indictment against two inmates for murder and conspiracy to commit murder. In response, on November 26, 1986, an AUSA involved in Doe's case wrote a letter to the United States Parole Commission, in which he detailed Doe's cooperation with the government in its investigation. The AUSA recommended the Commission "[k]indly consider this information in any manner you deem necessary at [Doe's] upcoming parole hearing." R. 37, Ex. 3a.

Sometime in December of 1986, Doe appeared before the Parole Commission for an initial hearing on his parole date. The Commission informed Doe that based on his involvement in the murder of a fellow inmate, it was increasing his offense severity rating to Category Eight. As a result of this increase, Doe would have to serve at least an

additional 100 months on his robbery sentence before he would become eligible for parole.

As a result of the Parole Commission's determination, Doe, apparently under the assumption that the 1986 agreement prohibited the Parole Commission from increasing his offense category rating, notified the government that he would no longer cooperate pursuant to the 1986 agreement. The government informed Doe that if that was the case, it would treat the 1986 agreement as void, and seek an indictment against him for the 1983 murder. In addition, the government informed Doe that as a result of his refusal to cooperate he would no longer be entitled to participate in the Witness Security Program.

Doe subsequently was indicted for one count of murder and one count of conspiracy to commit murder. On November 27, 1987, Doe and the government entered into a second plea agreement (the "1987 Agreement"). The 1987 agreement was virtually identical to the 1986 agreement except that it contained no promises with respect to recommendations to the Parole Commissions, and it modified paragraph 10 to read that "no testimony or incriminating information given by [Doe] pursuant to the terms of this Plea Agreement may be used directly *or indirectly* against [him] in subsequent criminal cases." Appellant's Br., Appendix 12 at 4 (emphasis added). On December 11, 1987, Doe, represented by new counsel, Mr. Jeffrey Goffinet, and the government appeared before the district court for a change of plea hearing. Following the hearing, the court accepted the 1987 Agreement, entered judgment against Doe for one count of conspiracy to commit murder, and, at the government's request, set the matter for sentencing following the completion of the trial at which Doe was scheduled to testify.

Due to Doe's prolonged involvement as a witness in this other criminal trial, sentencing on the 1987 Agreement was not set until February 26, 1990. Just days before sentencing, Doe, through counsel,[2] filed a motion to withdraw his guilty plea. The core of his motion was that the 1987 Agreement was not voluntarily made. In his affidavit attached to his motion, Doe characterized the government's statement that he would be removed from the Witness Security Program as a threat to subject him to harm at the hands of the Aryan Brotherhood unless he continued to cooperate with the government. In his affidavit, Doe also mentioned his problems with the Parole Commission. Doe alleged that as an inducement into the 1986 agreement, the government promised him that his guilty plea would not affect his parole date. He stated that after he accepted the 1986 agreement he learned that his guilty plea would in fact affect his parole date, and that it was this broken promise that caused him to bail out of the 1986 agreement.

The district court set a hearing on Doe's motion for the same date as sentencing. At the hearing, however, Doe's counsel orally moved to withdraw his motion, stating, with no objection from Doe, that he had been instructed to do so by his client. The court granted Doe's motion to withdraw his motion, and then proceeded to sentencing. The district court sentenced Doe to a term of 15 years to run concurrent with his present sentence.

Doe never filed a direct appeal. Instead, over two years later, he filed a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. The main thrust of Doe's motion was that the government induced him into the 1987 agreement by promising him that any information obtained through that agreement would not be used against him by the Parole Commission in setting or maintaining his offense severity rating. In support of his argument, Doe submitted a brief in which he alleged that these government promises were memorialized in paragraph ten of the 1987 agreement. In his opinion, that provision guaranteed that he would suffer neither direct nor *indirect* consequences from his decision to plead guilty under that agreement. Doe maintained that the Parole Commission's continued refusal to reinstate him at a

---

2. In his brief and argument to this court Doe's counsel represented that this was a *pro se* motion. However, the motion and the attached affidavit filed in the district court clearly reveal that this motion was filed by his second counsel, Mr. Goffinet.

Category Six offense severity rating constituted an indirect consequence of his guilty plea, in violation of paragraph ten of the 1987 agreement. As additional support, Doe also submitted an affidavit from the attorney who was present during the 1986 agreement negotiations, Alice Hull, who alleged that the AUSA present during these negotiations assured both her and Doe that nothing in the 1986 agreement would be used by the Parole Commission to enhance Doe's offense severity rating. Hull alleged that, had the AUSA not given Doe these assurances, she was sure that he would never have entered into this agreement. While Hull's affidavit certainly contains allegations that Doe was given oral assurances prior to entering into the 1986 agreement, it says absolutely nothing to support Doe's assertions that he had been given similar assurances as an inducement to enter into the 1987 agreement. Nevertheless, Doe requested the court to conduct an evidentiary hearing to determine the existence and scope of any promises offered by the government to induce Doe into accepting the 1987 agreement.

The district court noted that Doe was well aware of these complaints at the time of his sentencing in 1990, but nevertheless went on to address the merits of his petition. The court first addressed a challenge raised by Doe in his reply motion—that his 1987 plea was not voluntarily given. Doe claimed this was so because the government stated that he would be removed from the Witness Security Program unless he continued his cooperation with the government which entailed accepting the 1987 agreement. The court found nothing improper, much less coercive about the government's statement to Doe that only cooperating witnesses are entitled to the benefits of the Witness Security Program under 18 U.S.C. § 3521. The court held that "[u]nder these circumstances, ... the defendant made a voluntary and knowledgeable choice to enter the plea agreement so that he could remain in the program." Memorandum and Order at 3–4. As to Doe's claim that the government induced him into the 1987 agreement by promising that this plea would not be used against him by the Parole Commission, the court rejected this argument "as a misstatement of the record."

The court found that while paragraph four of the 1986 agreement stated that the government would recommend to the Parole Commission that Doe's offense category rating not be changed, there was nothing in the 1987 agreement making any promises—period—with respect to the Parole Commission. Finally, the court addressed Doe's implicit contention that the Parole Commission itself violated paragraph ten of the 1987 agreement by increasing Doe's offense severity rating. According to the court there was nothing in that paragraph which could be read as binding the Parole Commission. Instead, the plain language of that paragraph merely stated that any information obtained by Doe as a result of his plea would not be used against him in a criminal prosecution for other crimes. Consequently, the district court denied Doe's motion without holding an evidentiary hearing.

## II.

On appeal, Doe essentially raises two challenges to the district court's denial of his petition. He first complains that the district court failed to find that the government breached the 1986 agreement by not making any recommendations to the Parole Commission that Doe's offense severity rating be reinstated at Category Six. Second, he challenges the district court's determination that the 1987 agreement contained no promises by the government that the Parole Commission would be prohibited from using the underlying facts of the plea agreement in determining Doe's eligibility for parole. Doe argues that the language of the 1987 agreement contains an implicit promise to bind the Parole Commission. Alternatively, Doe contends that, even if the 1987 agreement cannot be construed in this fashion, he was unfairly induced to enter into that agreement by a series of actions taken by the government. As support, he lists the government's wrongful breach of the 1986 agreement. He also cites its threat to have him removed from the Witness Security Program unless he accepted the 1987 agreement. In addition, he claims various oral assurances that the 1987 agreement would take care of his problems with the Parole Commission. All

this, Doe says, constituted improper governmental "overreaching." This, he asserts, should allow this court to go beyond the language of the 1987 agreement and read into it an implied promise by the government to ask the Parole Commission to have his offense severity rating reinstated to a Category Six. As relief, Doe asks us to reverse the district court's denial of his petition, and enter judgment in his favor by ordering the government to remedy his situation before the Parole Commission. And if we cannot do that, he requests that we remand his case to the district court to conduct an evidentiary hearing on whether the government induced Doe into accepting the 1987 agreement with various oral promises.

■■■ Our review of the district court's decision, with respect to questions of law, is *de novo*. *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir.1994); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir.1994). Moreover, "a section 2255 petitioner is entitled to an evidentiary hearing on his claims, when he alleges facts that, if proven, would entitle him to relief." *Stoia*, 22 F.3d at 768.[3]

### A. Procedural Default

■ Before examining the merits of Doe's appeal, we turn first to address the issue of procedural default raised by the government in its brief to this court. As pointed out by the government, Doe had two opportunities to raise the issues he now raises via § 2255: the first, in his motion to withdraw his guilty plea, and the second, on direct appeal from his sentence. Yet Doe pursued neither of these options.[4] Stating the well-settled rule

that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal, *see, e.g., United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1588, 71 L.Ed.2d 816 (1982); *Degaglia v. United States*, 7 F.3d 609, 611–12 (7th Cir.1993), the government contends that Doe's failure to raise these issues in his motion to withdraw his guilty plea or on direct appeal constitutes a procedural default which can be overcome only upon a showing of cause and actual prejudice that will result from the errors of which he belatedly complains.

The government faces a problem of its own in making this argument. Our study of the record indicates that the government did not plead procedural default in the district court. In its reply to Doe's petition, the government understood Doe not to be attacking the legality of his conviction or sentence, but rather the refusal of the Parole Commission to adjust his offense severity rating on his underlying robbery conviction. As such, the government contended that the proper jurisdictional basis for carrying out this challenge was 28 U.S.C. § 2241, and argued that the district court lacked jurisdiction to hear this complaint under 28 U.S.C. § 2255. This of course was incorrect, because the thrust of Doe's petition was directed not to the actions of the Parole Commission but to the constitutionality of his guilty plea. The point of all this is that by erroneously concluding that the petition should have been filed under § 2241 the government failed to raise Doe's procedural default under § 2255. And as procedural default is not a jurisdictional defect, on which see *United States v. Kenngott,*

---

3. Pending oral argument, Doe's appellate counsel filed a motion to strike the government's brief for making arguments relying upon material not contained in the record. In response, the government filed a motion to supplement the record with materials included in the appendix to the government's brief, to which Doe responded by filing his own motion to supplement the record. As our decision has not relied upon any of the extra-record materials contained in the appendix to the government's brief, we deny both parties' motions to supplement the record. We also partially grant Doe's motion and strike the extra-record material from the appendix to the government's brief, and any references to them, from the record.

4. And a direct appeal would not necessarily have been a futile endeavor. Doe waived any of his objections to his guilty plea by not raising them at his sentencing hearing. *See, e.g., United States v. Phillips*, 37 F.3d 1210, 1215 (7th Cir.1994) (failure to raise at sentencing the government's breach of a plea agreement waives the issue for direct appeal); *United States v. Anderson*, 993 F.2d 1435, 1437 (9th Cir.1993) (failure to challenge voluntariness of guilty plea before the district court waives the issue); *United States v. Murphy*, 899 F.2d 714, 716 (8th Cir.1990) (same). Nevertheless, a waived objection to a guilty plea could be reviewed for plain error. *See Phillips*, 37 F.3d at 1215.

840 F.2d 375, 379 (7th Cir.1987), the government's failure to raise it before the district court creates at least the possibility that it waived this defense for purposes of this appeal.

 But waiver—whether on the part of defendant or the government—is an affirmative defense and, as such, "can itself be waived by not being raised." *See Garlington v. O'Leary,* 879 F.2d 277, 282 (7th Cir.1989). We point this out because at no time in the reply brief or during oral argument did Doe's able appellate counsel raise the fact that the government failed to assert procedural default before the district court. In fact, appellate counsel's only challenge to the government on this issue was focused on an apparent contradiction on the part of the government. The government first agreed with Doe's assertion of appellate jurisdiction made in his initial *pro se* appellate brief. But in its second brief filed in response to Doe's substituted amended brief, the government argued that Doe's appeal lacked jurisdiction based upon procedural default. *See* Appellant's Reply Br. at 3 n. 3. This apparent contradiction is beside the point given the fact that procedural default is non-jurisdictional. What is more important for our purposes is the fact that Doe's counsel, without challenging the government's ability to argue procedural default, went on to devote a significant portion of the reply brief establishing "cause" for the default. It is apparent, then, that Doe has conceded the government's assertion of procedural default (or, at the risk of being tedious, waived any argument that the government waived its defense of waiver). *Cf. United States v. Teague,* 956 F.2d 1427, 1433 (7th Cir.1992) (failure of defendant to counter in his reply brief the government's assertion of waiver in its brief constitutes concession to the government's position); *see also* Michael E. Tigar, *Federal Appeals, Jurisdiction and Practice* § 9.17 at 356 (2d ed. 1993) (stating that where appellee erroneously asserts that appellant waived an argument, the appellant should rebut such an assertion in his reply brief). "Because it is our practice to consider only those arguments presented to us," *Garlington,* 879 F.2d at 283, we will therefore accept the government's position that Doe has defaulted his claims, and turn now

to examine whether Doe can establish cause for his default.

*B. Cause and Prejudice*

Doe does not assert ineffective assistance of counsel as cause for his procedural default. Instead, he attempts to fit his case within the parameters of our decision in *Carnine v. United States,* 974 F.2d 924 (7th Cir.1992). There, the defendant entered into a plea agreement with the government with the understanding that his sentence would run concurrently with a sentence he was currently serving for an unrelated crime. Based on the language in the plea agreement, and the district court's recitation of it at sentencing, the defendant assumed that his sentence on his guilty plea was to start running on the date of the earlier-imposed sentence. Only after the time for taking an appeal had passed did the defendant discover that due to an ambiguity in his plea agreement the Bureau of Prisons was calculating the start date of his second sentence as the date of his sentencing hearing on his guilty plea. Defendant then filed a motion to vacate his sentence under 28 U.S.C. § 2255. The government responded that the defendant had waived this claim under § 2255 because he had not first raised this challenge on direct appeal. We held that under these circumstances the defendant could establish cause for his failure to appeal because "he did not become aware of [his challenge] until ... well after the deadline for direct appeal had elapsed." *Id.* at 928.

 As for Doe's first claim, that the government breached the 1986 agreement, we note that he does not even attempt to argue that *Carnine* saves this challenge from the consequences of not raising it on direct appeal. And for good reason. Assuming for the sake of this argument that the government had breached the 1986 agreement, it is obvious that Doe knew that when he abandoned the 1986 agreement and entered into the 1987 agreement. And Doe's knowledge of this lingered on until his sentencing in 1990, almost three years later. His affidavit in support of his motion to withdraw his guilty plea, filed February 21, 1990, told the

district court that he withdrew from the 1986 agreement because he "discovered that the guilty plea would affect [his] parole date" and that the representations by the AUSA at the time of the first agreement "were not true." *See* "Affidavit in Support of Motion to Withdraw Plea of Guilty," R. 22 at 2. This set the stage for the second (1987) agreement. *See id.* Clearly, then, Doe was well aware of this potential challenge both before and during the time for taking his direct appeal, which probably explains why he did not even attempt to argue that *Carnine* saves this claim from his procedural default.

Doe primarily focuses on the 1987 agreement. He claims that the government led him to believe that paragraph ten of that agreement insured that none of the information given in the plea would be used against him, directly or *indirectly*. Doe acknowledges that at the time of his sentencing hearing in 1990 he was aware that the government had not yet performed any of these so-called promises, yet he tells us that at that time, he still believed he would be better off going forward under the 1987 agreement, and did so under the belief that the government would eventually follow through on its promises. Doe argues that only after sentencing and after the time had passed for his appeal did he *know* that the government would not honor its promises. This, he says, established "cause" for his failure to take a direct appeal and permits a belated challenge under *Carnine*.

■ We are not persuaded. *Carnine* teaches that if the defendant had no reason to know of a problem before the time ran out for taking a direct appeal, it can constitute cause for his failure to do so. Yet by his own admissions, Doe confirms that at least by the time of sentencing, he certainly knew of any problems he had regarding the effects of his guilty plea on his parole date. In his brief filed in support of his motion to withdraw the 1987 plea, Doe alleged that the government promised him that nothing in the 1986 plea would affect his parole date. He then goes on to state how the Parole Commission increased his offense severity rating, causing him to abandon the 1986 agreement, which, in turn, set the stage for the parties entering

into the 1987 agreement. Surely after these events, coupled with three years of the government's nonperformance of any of its so-called promises, one can reasonably conclude that Doe, unlike the defendant in *Carnine*, certainly was very aware of any problem at the time of his sentencing. In fact, Doe even admitted to this in his reply to the government's motion to dismiss his petition, wherein he states that he filed his motion to withdraw his guilty plea "because [of] the government's continued breach of their commitments in not only [the 1986 agreement] . . . *but now [the 1987 agreement]."* "Movant's Declaration in Reply to Government's Motion to Dismiss," R. 37 at pp. 6, ¶ 12 (emphasis added). Moreover, Doe's appellate counsel acknowledged the same at oral argument when he stated that at the time of his sentencing Doe was "suspicious" that the government would not cure his problems with the Parole Commission. Such suspicion presupposes awareness, which undermines Doe's claim under *Carnine*. What is apparent is that Doe made a tactical decision to forego his direct appeal and instead, took a gamble that the government would eventually perform to his liking; if it did not, he would simply seek collateral relief under § 2255. Thus, unlike the defendant in *Carnine*, Doe was aware of this potential challenge during the time for taking an appeal; he simply chose not to pursue it.

■ At oral argument, Doe took the position that it was the responsibility of the district court, both at the change of plea and the sentencing hearings, to make further inquiry into whether there were any unfulfilled promises made to Doe in exchange for his plea. But the district court had already satisfied itself nearly three years earlier at Doe's change of plea hearing that his plea was voluntary and not the product of undisclosed promises. Moreover, at the sentencing hearing, Doe, through his counsel, withdrew his motion to withdraw his guilty plea. We have previously stated that "[a] decision to withdraw a motion to withdraw a guilty plea is in effect a reaffirmation of the original plea." *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).

Thus, contrary to Doe's assertions, the district court had no reason to suspect that there were any unfulfilled promises lurking about. Had Doe wished to challenge the government's failure to keep its alleged promises, he should have kept his motion to withdraw his guilty plea before the district court. That court could have conducted a hearing on the matter and, if appropriate, granted relief. Instead, Doe withdrew the motion from the district court and said nothing at his change of plea hearing concerning any breach or misrepresentation by the government. Within the allotted time he did not file a direct appeal. Finally, over two years later, Doe attempted to circumvent the process by filing a § 2255 motion in the district court requesting that his guilty plea be vacated because the government breached its promises. This tactical decision to hold back the most important argument, only to raise it much later, appears to be an attempt to "sandbag" the district court via collateral attack, a tactic condemned by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 89–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977). This is hardly good cause for escaping a procedural default under § 2255.

■ Doe is thus unable to establish cause for his failure to raise on direct appeal the government's alleged breach of any promises contained in the 1987 agreement. The more fundamental question, which occupies the prejudice prong of the procedural default analysis, is what "promises" were made in the first place? Plea agreements are contracts, which means that the first place to look in determining the extent of the government's promises under the 1987 agreement is the language of the agreement itself. *See United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). Yet on its face, the 1987 agreement says nothing regarding the government's obligation to make any recommendations to the Parole Commission regarding Doe's offense rating. Notably, paragraph four of the 1987 agreement specifically omits the language in the corresponding paragraph of the 1986 agreement obligating the government to make recommendations to the Parole Commission on Doe's behalf. Paragraph ten of the 1987 agreement, of which Doe makes much, states that the government may not directly or indirectly use against Doe any information it obtained as a result of his plea. However, this broad prohibition unambiguously states that it only bars the government from using this information in any subsequent criminal prosecution; it says nothing indicating a promise that the Parole Commission would be prohibited from considering the underlying facts of the 1983 murder in determining Doe's eligibility for parole. Summing up, there is absolutely nothing in the language of the 1987 agreement which can be construed as a promise by the government to take any steps on Doe's behalf before the Parole Commission.

■ Doe urges us, as he did the district court, to interpret paragraph ten of the 1987 agreement in light of the holding of *Davis v. United States*, 649 F.Supp. 754 (C.D.Ill.1986), in which the district court concluded that a plea agreement employing virtually identical language contained an implicit promise to bind the Parole Commission. This court squarely rejected *Davis*'s holding in *Augustine v. Brewer*, 821 F.2d 365 (7th Cir.1987). Specifically, this court in *Augustine*, after reiterating that the determination of a defendant's eligibility for parole is a process wholly separate from that of sentencing, stated that "plea agreements that bind the prosecution with respect to the filing of additional criminal charges ... do not, absent a clear intent to the contrary, constrain the broad discretion of the Parole Commission to consider all relevant facts and circumstances bearing upon an individual's eligibility for parole." *Id.* at 369 n. 2. Because there is nothing in the language of the 1987 agreement that comes close to a promise to restrict the Parole Commission, in light of *Augustine*, we refuse to read such a promise into this unambiguous agreement.

Doe attempts to evade the plain language of the 1987 agreement by arguing that the 1987 agreement was a product of governmental overreaching. Doe maintains that the government induced him into the 1987 agreement through the combination of breaching the 1986 agreement, threatening to remove

him from the Witness Security Program if he refused to accept the 1987 agreement, and giving him various oral assurances which, Doe says, led to his own "understanding" that paragraph ten of the 1987 agreement would take care of his problems with the Parole Commission. As a result of this "overreaching," Doe claims that he is entitled to an evidentiary hearing at which he could establish his claim that the 1987 agreement should be interpreted in light of the government's alleged oral promises.

 This court has stated that due to the unique nature of plea agreements, the ordinary rule of contract law forbidding resort to extrinsic evidence in interpreting an unambiguous agreement may be suspended if it can be demonstrated that the government engaged in overreaching in negotiating the plea. *See Ingram*, 979 F.2d at 1184. However, Doe has pointed us to no instances of improper governmental action which, either in isolation or in combination, support his claim that the government "overreached" by inducing him into the 1987 agreement. Doe's first step in establishing his claim of governmental overreaching is to direct us to the government's so-called breach of the 1986 agreement. But as noted earlier, that agreement was never reduced to a court judgment, and so its breach cannot form the basis of a constitutional challenge. The next instance of alleged overreaching, according to Doe, was the government's statement that Doe would be removed from the Witness Security Program if he refused to cooperate and accept the 1987 agreement. However, there was nothing improper, much less coercive about this. Under 18 U.S.C. § 3521(f), only cooperating witnesses are entitled to participate in the Witness Security Program. And according to *United States v. Mezzanatto*, — U.S. —, —, 115 S.Ct. 797, 805, 130 L.Ed.2d 697 (1995), merely informing a defendant of the consequences to his refusal to accept a plea bargain does not violate Due Process. Hence, this action cannot support a claim of governmental overreaching.

 But even if we were to agree with Doe that these actions constituted governmental "overreaching," none of the extrinsic evidence Doe offers supports his subjective understanding of paragraph ten of the 1987 agreement. One of Doe's key pieces of evidence was an affidavit by his former attorney, Alice Hull. A closer examination of that affidavit, however, reveals that Hull only alleged that she was present during negotiations leading up to the 1986 agreement; nowhere in her affidavit does she allege that she was present during the events leading up to the 1987 agreement, meaning that her affidavit has no bearing on interpreting that agreement. The only other evidence Doe offered was his own affidavit in which he alleges that it was his subjective understanding that the 1987 agreement would cure his problems with the Parole Commission. But these types of self-serving allegations, without some other documentation, do not permit a defendant to leapfrog over an unambiguous plea agreement and proceed to an evidentiary hearing on the existence of additional governmental promises. *See Bischel*, 32 F.3d at 264; *see also Barker v. United States*, 7 F.3d 629, 633 n. 3 (7th Cir.1993) (observing that "[n]o hearing is necessary if the allegations are mere conclusions or are inherently unreliable") (quotations and citations omitted), *cert. denied*, — U.S. —, 114 S.Ct. 939, 127 L.Ed.2d 229 (1994). Consequently, there is nothing in this record to support Doe's claim of governmental overreaching, which meant there is no basis to go beyond the clear language of the 1987 agreement. Thus, no unfulfilled promises exist.

## III.

For the reasons stated above, the district court's denial of Doe's § 2255 petition is

AFFIRMED.