NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 13, 2007
Decided December 17, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-4060

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*, | Appeal from the United States<br>District Court for the Eastern<br>District of Wisconsin. |
| *v.* | |
| | No. 05-CR-11 |
| LAWRENCE T. TURNER,<br>    *Defendant-Appellant*. | Rudolph T. Randa,<br>*Chief Judge*. |

**O R D E R**

Lawrence Turner pleaded guilty to participating in a conspiracy to possess and distribute crack and powder cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1). Before sentencing, though, he wrote several letters to the presiding district judge complaining about his appointed counsel and asking for a replacement. The court granted this request and appointed substitute counsel to represent Turner at the sentencing hearing. The court sentenced Turner to serve a term of 270, a sentence 90 months below the bottom of the appropriate guidelines range. The defendant-appellant Turner argues on appeal that the court erred in failing to construe the content of his letters as a motion to withdraw his guilty plea. Because the district

court judge had previously appointed counsel and substitute counsel at the defendant's request, the defendant had representation at all times while appearing before the court and did not request to withdraw his guilty plea. It is not the duty nor the responsibility of the trial judge to participate in the prosecution or the defense. The judge is to remain fair and impartial. Because Turner at no time individually or with counsel moved the court to withdraw the previously entered guilty plea, nor did he file a motion under 28 U.S.C. § 2255, we affirm the judgment.

Turner and his cohorts known as "2-6 Vice Lords" bought cocaine in Texas and Illinois and transported it to Milwaukee, Wisconsin where they sold it. Turner, the alleged ringleader, admitted in his plea agreement that the conspiracy involved at least 50 grams of crack and 5 kilograms of powder cocaine. Thus he faced a sentence of 20 years to life in confinement. *See* 21 U.S.C. § 841(b)(1)(A). During the plea hearing, Turner stated under oath that no one had made any threats or promises to induce him to plead guilty aside from the information contained in the plea agreement on file with the court. Furthermore, Turner acknowledged that he was satisfied with his first lawyer's representation and had no questions for his attorney or the court dealing with his guilty plea or the plea process. It should also be made clear that during that period of time, Turner was assisting the government in its prosecution of other members of the conspiracy and at the request of the government, the court delayed sentencing to facilitate Turner's ongoing cooperation.

While Turner was in custody, he began to harass his former girlfriend, Tosha Rudd, and persuaded his friends to break all the windows in her home. As a result the court restricted his phone and visitation privileges. Turner next made up a story about a co-conspirator in an attempt to gain additional credit for cooperation. As a result of this most recent illegal activity, Turner damaged his credibility and the prosecution decided not to use him to testify against another co-conspirator.

In February 2006, eleven months after pleading guilty, Turner sent the trial judge the first in a series of letters expressing his dissatisfaction with his initially appointed counsel, Mark Rosen. Turner stated that Rosen had "never had his best interest at heart," had ignored the contents of discovery evidence in advising him to plead guilty, and had failed to give him proper information regarding the effect of a proposed four-level upward adjustment under U.S.S.G. § 3A1.1. Turner requested that the district court permit him to speak with another counsel. The prosecutor wrote the court opposing Turner's request for new counsel and giving due credit to Rosen's performance.

Later that same month Turner wrote a second letter to the trial judge requesting substitute counsel. Turner now alleged that Rosen had conspired with investigators and the prosecutor to get him to enter a plea of guilty, and that the prosecutor's letter in support of Rosen was evidence of that conspiracy.

Furthermore, Turner asserted that Rosen "made" him execute the plea agreement even though he was unhappy with the bargain and had said so to counsel. Turner also complained that Rosen had made no effort to get drug evidence suppressed or moved to dismiss the indictment on grounds of selective prosecution. He furthermore complained that Rosen told him that the four-level leadership adjustment would be outweighed by the credit he would receive for cooperating with the government. In response Rosen advised the court that his communication with Turner had broken down and that he believed the court should grant Turner's request for new counsel. The court acquiesced in Turner's request, but also found and acknowledged that Rosen had zealously represented Turner. The court permitted his counsel to withdraw based on the breakdown in communication.

After that, Turner continued to send letters complaining about Rosen until the court named new counsel. Turner's correspondence then came to a halt. His new counsel, Gregory Dutch, did not move to withdraw Turner's guilty plea, nor did he file any motion concerning Rosen's performance.

Six months later the district court sentenced Turner to a term of 270 months after considering the guidelines range of 360 months to life, the statutory minimum of 20 years, and the government's motion under U.S.S.G. § 5K.1 for a sentence 25% below the range to reflect Turner's cooperation tempered by his misconduct while in jail. At the sentencing hearing, Turner admitted his guilt in a letter to the court, stating that he was ready to enter his plea and accept the consequences.

On appeal Turner now argues that the district court should have addressed the allegations in his letters that Rosen coerced his guilty plea through deficient performance. Turner does not ask us to decide whether Rosen was ineffective; rather, he wants us to order a remand "to allow the district court to address Mr. Turner's pro se letter." The parties disagree about the standard we should use to review the propriety of the district court's response to Turner's letters. Turner argues that whether a district court "may fail to address a pro se letter complaining that defense counsel" coerced a guilty plea is a question of law that should be reviewed de novo. The government counters that the construction a district court gives to a pro se submission is reviewed for abuse of discretion. But neither party has addressed the relevant question: did the district court have any obligation to further consider Turner's pro se letters after appointing substitute counsel to replace Rosen? Turner's entire presentation assumes that the answer is yes, but he cites no authority to support his unstated premise.

The district court had no duty to consider Turner's pro se letters. We have often observed that a district court need not address pro se submissions received from counseled defendants. *See, e.g., United States v. James*, 487 F.3d 518, 527-28 (7th Cir. 2007) (noting that district court could but did not have to address counseled defendant's pro se motions); *United States v. Traeger*, 289 F.3d 461, 471

(7th Cir. 2002) (holding that district court was not required to address defendant's pro se motion once new counsel was appointed). At no point did Turner waive his right to counsel or invoke his right of self-representation. Instead, he appears to argue that he was entitled to *both* new counsel and self-representation. But representation by counsel and self-representation are "mutually exclusive entitlements." *United States v. Johnson,* 223 F.3d 665, 668 (7th Cir. 2000) (quotation marks and citation omitted). And hybrid representation is generally disfavored, *see United States v. Chavin*, 316 F.3d 666, 671-72 (2002), so once the court provided Turner with a second counsel, it had no obligation to give Turner's letters any further consideration, for he had competent representation. *Traeger*, 289 F.3d at 471.

Even assuming that, according to Turner, his letters were intended to be construed as a motion to withdraw his guilty plea, Turner effectively ratified his plea by forgoing the opportunity to challenge it once Dutch took over his representation. *See Doe v. United States,* 51 F.3d 693, 700-01 (7th Cir. 1995); *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir. 1985). Over six months passed between the time of Dutch's appointment and the sentencing hearing—ample time for Turner to consult with Dutch regarding Rosen's alleged ineffectiveness and file a formal motion to withdraw his plea. And the district court gave Turner the opportunity at sentencing to voice any remaining concerns, and he said nothing about Rosen or wanting to withdraw his plea. In fact, he again acknowledged his own guilt. The district court was not required to respond to Turner's pro se complaints about Rosen once Turner declined to challenge his guilty plea with Dutch's assistance.

Finally, Turner argues that remand is appropriate because the government might argue in any subsequent collateral action under 28 U.S.C. § 2255 that he waived his ineffective-assistance claim concerning Rosen's performance. But Turner cites incorrect law in support of this proposition. The government says it will not make this argument, nor can it after *Massaro v. United States*, 538 U.S. 500 (2003) and its progeny. *See, e.g., id.*, at 504-05; *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

AFFIRMED.