In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1632

FERNANDO DELATORRE,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 1355 — **Ruben Castillo**, *Chief Judge.*

ARGUED SEPTEMBER 28, 2016 — DECIDED FEBRUARY 3, 2017

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury convicted Fernando Delatorre of several felonies. He was sentenced to life in prison, and his conviction and sentence were affirmed on appeal. He then filed a motion to vacate, set aside, or correct his sentence, arguing that (1) the prosecutor committed misconduct by reneging on a promise to provide him with a plea agreement and (2) his pretrial counsel's performance was constitu-

tionally ineffective. The district court rejected these claims and denied his collateral motion.

Because Delatorre failed to raise the prosecutorial-misconduct claim in the district court or on direct appeal, we hold that this claim has been procedurally defaulted. We further hold that Delatorre has failed to meet the cause-and-prejudice standard necessary to overcome procedural default. We therefore do not address the merits of that claim. Finally, because Delatorre's pretrial counsel was not deficient and because Delatorre suffered no prejudice as a result of his counsel's performance, we reject his claim of ineffective assistance of counsel.

## I. BACKGROUND

Delatorre was a member of the Insane Deuces street gang in Aurora, Illinois. In 2002, state and federal authorities—assisted by Delatorre's fellow gang member Orlando Rivera, who had agreed to serve as a confidential informant—began investigating the gang. Rivera worked with the authorities and recorded several meetings and conversations between active members of the gang, including Delatorre. Through these recordings, Rivera produced evidence of the gang members' many crimes, including at least four murders, eleven attempted murders, two solicitations to commit murder, several shootings, and numerous drug offenses.

On January 31, 2003, Delatorre was arrested for his connections to these crimes. Shortly after his arrest, he confessed to his involvement in at least three of the murders. In 2006, Delatorre and fifteen other gang members were indicted on racketeering and other related charges. The district court then divided the sixteen defendants into two groups for trial.

Delatorre was tried with other gang leaders. A jury convicted him of (1) engaging in racketeering conspiracy; (2) murder in aid of racketeering activity; (3) conspiracy to distribute a controlled substance; (4) assault with a dangerous weapon in aid of racketeering activity; (5) distribution of crack cocaine; and (6) possession of a firearm with an obliterated serial number. He was sentenced to life in prison.

Delatorre and his codefendants raised several arguments on appeal. We rejected each of those arguments in two separate opinions. *See United States v. Benabe*, 654 F.3d 753 (7th Cir. 2011); *United States v. Benabe*, 436 Fed. App'x 639 (7th Cir. 2011). Delatorre then filed a petition for a writ of certiorari in the Supreme Court. On February 21, 2012, the Supreme Court denied that petition.

On February 6, 2013, Delatorre moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 in the Northern District of Illinois. In that motion, he argued that (1) the prosecutor committed misconduct by reneging on a promise to provide a plea agreement and (2) his pretrial counsel was constitutionally ineffective.[1]

Delatorre based his prosecutorial-misconduct and ineffective-assistance-of-counsel claims on events associated with his cooperation with the government beginning in February of 2003, shortly after his arrest. At that time, he participated in eight to ten proffer sessions with the United States

---

[1] In his § 2255 motion, Delatorre also argued that his Sixth and Eighth Amendment rights had been violated. Because we issued a certificate of appealability only as to the prosecutorial-misconduct and ineffective-assistance-of-counsel claims, we do not address these additional claims.

Attorney's Office. A proffer letter, which Delatorre and the prosecutor both signed, outlined the cooperation arrangement. In exchange for his cooperation and truthful testimony both during the proffer sessions and at subsequent court appearances, the government agreed not to use "anything related to the government by [Delatorre or his attorney] during the proffer" in any subsequent criminal proceedings filed against Delatorre. (R. 1 at 34.) The letter further explained that it "embodie[d] the entirety of the agreement to make a proffer … . No other promise or agreement exist[ed] between [Delatorre] and [the government] regarding the proffer." (R. 1 at 35.)

At one of the later proffer sessions, Delatorre asked the prosecutor how much time he was "eventually going to have to serve[.]" (R. 1 at 12.) The prosecutor responded "A long time." (R. 1 at 12.) Unsatisfied with this answer, Delatorre repeated his request. The prosecutor responded "A long time, you were involved in too much." (R. 1 at 13.) Delatorre then asked the prosecutor "exactly how long" he would have to serve, and the prosecutor responded "You will serve 25–30 years." (R. 1 at 13.) The prosecutor further explained that he intended to provide Delatorre with a plea agreement if he continued to cooperate, but that he would have to serve at least twenty-five to thirty years because the government "h[eld] all the cards." (R. 1 at 13.)

After completing these proffer sessions, Delatorre requested a formal plea agreement that included the twenty-five to thirty year term. The prosecutor "made it very clear that at that point he could not provide [Delatorre] with a plea or anything in writing and would not with respect to the 25–30 year offer." (R. 1 at 13.) Instead, the prosecutor in-

structed Delatorre to "continue cooperating, take a leap of faith, and play ball." (R. 1 at 13.) Delatorre then testified twice before a grand jury without a plea agreement.

Because the government continued to refuse to give Delatorre a plea deal, he stopped "playing ball" shortly thereafter. Despite repeated efforts by his attorney—Fred Morelli—to encourage him "in the strongest possible terms" to continue cooperating, Delatorre refused to appear before the grand jury a third time to complete his testimony. (R. 1 at 36, 38.) Morelli then explained that Delatorre's continued refusal to cooperate would likely "result in [his] indictment on, at the least, the federal case for which [he was] arrested and for either two or three murders." (R. 1 at 36.) Morelli further explained to Delatorre that a jury would likely convict him of at least one of those murders, and that if convicted, he would almost certainly be sentenced to life in prison, or worse, be eligible for the death penalty. Nonetheless, Delatorre refused to cooperate with the government and had no further contact with Morelli, who soon withdrew his representation. Because he ceased his cooperation, Delatorre never received a plea agreement.

In his § 2255 motion filed with the district court, Delatorre alleged that the prosecutor promised to provide him with a plea agreement that included a recommended sentence of twenty-five to thirty years. He thus argued that the prosecutor committed misconduct by reneging on that promise and failing to provide him with a plea deal. In the same vein, Delatorre also argued that Morelli's failure to secure the allegedly agreed-upon plea agreement amounted to constitutionally ineffective assistance of counsel. The district court rejected those arguments and denied his motion. Delatorre

then filed a motion for reconsideration, which the district court also denied. This appeal followed.

## II. ANALYSIS

On appeal, Delatorre reasserts his two arguments related to the prosecutor's alleged breach of a promise to provide him with a plea agreement. We review a district court's denial of a § 2255 motion *de novo* as to issues of law. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). We review the district court's factual findings for clear error. *Id.* We begin with the prosecutorial-misconduct claim and then turn to the ineffective-assistance-of-counsel claim.

### A. Prosecutorial-Misconduct Claim

Delatorre first argues that the prosecutor committed misconduct when he reneged on his promise to provide a plea agreement. But Delatorre did not raise this claim in the district court at trial or on his direct appeal. Instead, he raised this claim for the first time on collateral review in his § 2255 motion. Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted. *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013) (holding that a claim that was not raised in the trial court or on direct appeal was "doubly defaulted" on collateral review). Thus, Delatorre's prosecutorial-misconduct claim is procedurally defaulted.[2]

---

[2] The district court did not consider procedural default, and it is unclear from the record whether the government ever made this argument before this appeal. As we noted in *Doe v. United States*, the government's failure to raise a procedural-default argument in the district court might

(continued…)

Procedurally defaulted constitutional claims are not considered on collateral review unless the petitioner shows either (1) actual innocence or (2) cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Delatorre makes no argument for actual innocence. We therefore restrict our analysis to the cause-and-prejudice standard. *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). To excuse a procedural default for cause and prejudice, a petitioner must demonstrate both (1) good cause for his failure to raise the defaulted claim before collateral review and (2) actual prejudice stemming from the violations alleged in the defaulted claim. *Theodorou v. United States*, 887 F.2d 1336, 1340 (7th Cir. 1989).

To establish "cause," Delatorre argues that he was unaware during his trial and on direct appeal that the government's failure to offer a plea agreement, as allegedly promised, amounted to a *constitutional* violation. He does not argue, however, that he was unaware of any of the facts giving rise to that potential claim. In fact, he knew before his trial

---

(…continued)

result in a waiver of that argument. 51 F.3d 693, 698–99 (7th Cir. 1995). We need not consider that issue here, however, because Delatorre never argued that the government waived its procedural-default argument. *Id.* at 699. In fact, like the defendant in *Doe*, Delatorre "devote[d] a significant portion of the reply brief establishing 'cause' for the default." *Id.* We think that "[i]t is apparent, then, that [Delatorre] has conceded the government's assertion of procedural default (or, at the risk of being tedious, waived any argument that the government waived its defense of waiver)." *Id.* It also doesn't matter that the district court did not consider procedural default: "We may affirm on any basis fairly presented in the record." *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016).

even began that the government allegedly promised him a plea agreement and that he was never presented with that plea agreement: he was thus aware of *all* of the facts giving rise to the alleged violation. Nothing occurred after his trial or direct appeal that altered his potential claim. Thus, the proper time to raise that argument was at the district court before he was convicted and then again on direct appeal, not for the first time on collateral review. The fact that Delatorre may have been subjectively unaware of the *constitutional* ramifications of the government's inaction is not sufficient "cause" justifying a procedural default. *See id.* at 1340–41 (holding that a defendant who was aware of all of the facts giving rise to the claimed constitutional violation before sentencing could not establish "cause" for his procedural default).

Delatorre also argues that his prosecutorial-misconduct claim—like most claims of ineffective assistance of counsel—is so inextricably linked to extrinsic evidence that it could not have been properly considered on direct appeal. He argues that this also provides "cause" for his procedural default. We disagree.

Delatorre is correct that "[a] reviewing court on direct appeal is limited to the record of trial and cannot consider any extrinsic evidence." *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002). A claim of ineffective assistance of counsel requires a defendant to prove that his counsel performed deficiently and that this deficiency caused him prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The evidence introduced at trial [in the case giving rise to the claim of ineffective assistance], however, will be devoted to issues of guilt or innocence, and the resulting record in

many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis." *Massaro v. United States*, 538 U.S. 500, 505 (2003). Thus, claims of ineffective assistance, by their very nature, are almost "invariably doom[ed]" on direct review because they often require augmentation of the record with extrinsic evidence, which cannot be considered. *United States v. Gilliam*, 255 F.3d 428, 437 (7th Cir. 2001) (quoting *United States v. Godwin*, 202 F.3d 969, 973 (7th Cir. 2000)). We thus permit these claims, in most instances, to be raised for the first time on collateral review. *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014) (citing *Massaro*, 538 U.S. 500).

Delatorre's prosecutorial-misconduct claim, on the other hand, does not, by its very nature, require augmentation of the record. The only reason extrinsic evidence is required to prove his claim is because *he* failed to raise this claim in the district court in the first place. Had he raised this claim at the proper time—in the district court before he was convicted—his evidence supporting that claim would have been in the trial record and could have been considered on direct appeal. His prosecutorial-misconduct claim is not akin to an ineffective-assistance-of-counsel claim in this regard, and we refuse to reward Delatorre for *his* creation of an evidentiary issue.

Because Delatorre has provided no plausible "cause" for his failure to raise his prosecutorial-misconduct claim before collateral review, we decline to excuse the procedural default and do not address the merits of that claim.

*B. Ineffective-Assistance-of-Pretrial-Counsel Claim*

Delatorre's ineffective-assistance-of-counsel claim is related to his prosecutorial-misconduct claim. Like with his first claim, he again relies on an alleged promise made by the prosecutor to provide him with a plea agreement that included a maximum recommended sentence of twenty-five to thirty years. According to Delatorre, his pretrial counsel—Morelli—rendered constitutionally ineffective assistance when he failed to secure that allegedly promised plea agreement.

We first briefly note that this claim does not suffer from the same procedural default as the prosecutorial-misconduct claim even though it, too, was raised for the first time in Delatorre's § 2255 motion. As discussed above, ineffective-assistance-of-counsel claims, by their very nature, are almost "invariably doom[ed]" on direct review. *Gilliam*, 255 F.3d at 437 (quoting *Godwin*, 202 F.3d at 973). Thus, we generally permit a petitioner to raise these claims for the first time on collateral review, "regardless of whether the petitioner could have raised the claim on direct appeal." *Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016) (citing *Massaro*, 538 U.S. at 504). We follow that general rule here and excuse Delatorre's failure to raise this argument on direct appeal. We now turn to the merits of this claim.

To succeed on his Sixth Amendment claim of ineffective assistance of counsel, Delatorre had to demonstrate both elements of the test announced in *Strickland*, 466 U.S. 668. First, he had to show that his counsel's performance was constitutionally deficient, meaning that it "fell below an objective standard of reasonableness" measured "under prevailing professional norms." *Id.* at 688. Second, he had to

show that he suffered prejudice because of this deficiency, meaning that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The district court concluded that Delatorre had failed to establish either element. We agree. We begin our discussion with deficient performance and then move to prejudice.

*1. Deficient Performance*

Delatorre has failed to establish that Morelli's representation was constitutionally deficient. When analyzing deficient performance, we apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). The central question in this analysis is not whether counsel's conduct "deviated from best practices or most common custom," but instead, "whether an attorney's representation amounted to incompetence under 'prevailing professional norms.'" *Sussman v. Jenkins*, 636 F.3d 329, 349–50 (7th Cir. 2011) (quoting *Harrington*, 562 U.S. at 105). In other words, a counsel's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *McAfee v. Thurmer*, 589 F.3d 353, 355–56 (7th Cir. 2009) (quoting *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985)). It must merely be reasonably competent. *Strickland*, 466 U.S. at 687.

Delatorre is correct that his Sixth Amendment right to effective counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *see also Missouri v. Frye*, 566 U.S. 133, 144 (2012) ("In today's criminal justice system … the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a de-

fendant."). The Supreme Court has held that an attorney who fails to make a meaningful attempt to inform his client of an existing written plea offer, *Frye*, 566 U.S. at 149, or advises his client to reject a highly favorable plea offer "on the grounds [the client] could not be convicted at trial," *Lafler*, 566 U.S. at 163, has performed deficiently under the Sixth Amendment. Delatorre cannot rely on these cases, however, because he was never formally offered a plea agreement.

Instead, Delatorre's claim of deficient performance centers on his attorney's inability to secure a plea deal that included a maximum recommended sentence of twenty-five to thirty years. In making this argument, Delatorre again focuses on the prosecutor's alleged promise to provide him with a plea agreement. True enough, the prosecutor did suggest that, if Delatorre continued to cooperate, the government would *then* offer him a plea agreement. But even if we assume that this suggestion was a "promise" of a plea deal, it was explicitly conditioned on Delatorre's continued cooperation. Because Delatorre ceased cooperating, the government did not offer him a plea agreement. So the government did not breach any promise.

Morelli's representation was entirely reasonable under the circumstances. Before he began representing Delatorre, Delatorre had already made incriminating statements to Rivera—who again, was acting as a government informant. Moreover, Delatorre had already confessed to the authorities his involvement in at least three of the murders. Delatorre's options were thus already "rather limited" by the time Morelli began representing him. *Delatorre v. United States*, No. 13 C 1355, 2015 WL 1176820, at *7 (March 11, 2015). In fact, Morelli believed that the government had more than enough

evidence to convince a jury to convict Delatorre of at least some of the crimes for which he was charged. In Morelli's opinion, the prosecutor was willing to negotiate with Delatorre only because he was one of the first gang members to come forward and speak with the government. In an effort to secure the most favorable plea agreement possible, Morelli therefore instructed his client—on numerous occasions—to cooperate fully with the government.

"[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000). Morelli cannot be faulted for Delatorre's refusal to cooperate, especially in light of his repeated efforts to encourage his client to do so. Moreover, he cannot be faulted for the government's decision not to reward an uncooperative defendant with a plea agreement. The government is not required to offer any defendant such an agreement. *Id*. Delatorre's arguments that Morelli's representation was anything but competent are unavailing. Under the circumstances, Morelli's representation was not constitutionally deficient. In fact, it was quite reasonable.

*2. Prejudice*

Even if we believed that Morelli's representation was constitutionally deficient, we would still reject Delatorre's ineffective-assistance-of-counsel claim because he also cannot establish that he suffered prejudice as a result of Morelli's representation. To demonstrate prejudice, Delatorre had to show a reasonable probability that "the outcome of the plea process would have been different with competent ad-

vice." *Lafler*, 566 U.S. at 163. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because Delatorre's prejudice argument centers on his *attorney's* inability to secure a plea agreement for him, Delatorre had to show—at a minimum—that the prosecutor would have actually offered him a deal had his attorney been competent. *See Frye*, 566 U.S. at 147–49 (discussing the prejudice standard in cases where the defendant alleges that he did not receive the benefit of a plea agreement because of his attorney's deficient performance).

He has failed to meet this burden. As discussed above, it was Delatorre's stubborn refusal to continue cooperating that prevented him from securing a plea deal, not his attorney's performance. Nothing in the record indicates that the prosecutor would have provided Delatorre, an uncooperative defendant, with a plea deal had Morelli performed any differently. In short, Delatorre did not suffer prejudice from his attorney's performance.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Delatorre's motion.