**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 4, 2019
Decided January 2, 2020

Before

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

Nos. 18-2920 & 18-2921

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* <br><br> *v.* <br><br> VIBGYOR OPTICAL SYSTEMS, INC., and BHARAT VERMA, *Defendants-Appellants.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> Nos. 15-cr-18-1 & 15-cr-18-2 <br><br> Elaine E. Bucklo, *Judge*. |

**ORDER**

Vibgyor Optical Systems supplied parts used in American military equipment. For eight years, Vibgyor and its owner, Bharat Verma, breached American import and export controls by sending specifications of those parts to Chinese manufacturers and ordering from those manufacturers without a license. Vibgyor and Verma both pleaded guilty to conspiracy to violate the Arms Export Control Act, and Verma pleaded guilty to an additional charge of

international money laundering. As part of their pleas, the defendants agreed to forfeit the proceeds traceable to their offenses in an amount that the district court would determine at sentencing. The government initially proposed that the defendants should be ordered to forfeit $690,513.00. The government then offered an alternative calculation of $514,279.65. Defense counsel raised substantive and procedural objections to the government's calculations, and in response, the district court ultimately lowered the forfeiture judgment to $430,701.12. On appeal, defendants argue that their counsel's performance at sentencing was constitutionally ineffective. We disagree and affirm the sentence.

I.

Vibgyor Optical Systems was a supplier of parts used to produce military equipment. Vibgyor did not itself manufacture the parts; instead, Vibgyor and its owner, Bharat "Victor" Verma, ordered them from manufacturers based in China. Vibgyor then sent the parts to contractors for the U.S. Department of Defense. The contractors in turn sent the parts to DOD. Vibgyor and Verma never disclosed to DOD that the parts had been manufactured in China.

Some of the parts manufactured in China were sensitive, critical components listed on the United States Munitions List and the United States Munitions Import List. Federal law requires anyone who imports or exports parts included on those lists to have a license or permit to do so. Vibgyor, however, lacked a permit. And not only that, Vibgyor and Verma also sent sample parts and directions for constructing the necessary parts to the Chinese manufacturers before ordering from them—a potential security breach. Predictably, Vibgyor's business in China landed it in hot water. In 2016, Vibgyor and Verma were charged with several violations of federal law. Vibgyor ultimately pleaded guilty to a charge of conspiracy to violate the Arms Export Control Act and to knowingly defraud the United States. Verma pleaded guilty to the same as well as to a charge of international money laundering. As part of their plea agreements, the defendants agreed to forfeit the proceeds traceable to their offenses in an amount that the district court would determine at sentencing.

Before sentencing, the government proposed that the defendants should forfeit $690,513.00. Here's how it arrived at that number: First, it looked at the credits and deposits in the defendants' bank accounts between January 2009 and March 2014. Next, it eliminated any payments that came from a payor whose business was not fully related to DOD contracts. It then further reduced the

number to include only the payments relating to parts listed on the Munitions List and the Munitions Import List. Finally, it deducted the defendants' costs so that the forfeiture was limited to profits rather than proceeds.

Before sentencing, defense counsel raised several challenges to the government's methodology. First, she argued that the government had not provided its forfeiture calculations in a timely manner. She also contended that the government should have looked at individual contracts, rather than the bank records that aggregated credits and payments from the defendants' accounts. Finally, she argued that the government had not met its burden of proving that the calculated profits had come only from the relevant contracts. She maintained that certain payments counted in the calculation were actually for American-made parts and that others were for parts not used for DOD contracts. At sentencing, the government called IRS special agent Jason Gibson to testify about its calculations. Gibson presented an exhibit, Gibson 1, that demonstrated how he arrived at the $690,513.00 figure. He also presented a second exhibit, Gibson 2, an alternative spreadsheet that used the same methodology but limited the calculation to begin only in May 2010, after the government had confiscated much of the defendants' inventory. The alternative forfeiture calculation based on Gibson 2 was $514,279.65.

Defense counsel cross-examined Gibson and made affirmative arguments to the court. Again she pressed the timeliness point. When the district court offered her a continuance, she declined, explaining that she had raised the government's lateness to highlight the unreliability of its calculations. And once again, she challenged the substance of Gibson's calculation. She proposed a forfeiture amount of $394,010.54. The district court ultimately adopted the figure from Gibson 2 and then reduced it further in response to the defendants' argument that some of the calculated parts had been made in America. The district court entered an order for a personal money judgment against defendants for $430,701.12.

## II.

On appeal, defendants argue that their counsel's performance denied them their Sixth Amendment right to effective assistance of counsel. To demonstrate constitutionally ineffective assistance of counsel, the defendants have to prove that (1) counsel's performance was deficient, which is to say, it fell below an objective standard of reasonableness, and (2) the deficient performance actually

prejudiced their defense. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Presenting an ineffective assistance claim on direct appeal without the benefit of record development is generally disfavored, and a defendant typically has only a "trifling prospect of success." *United States v. Flores*, 739 F.3d 337, 341–42 (7th Cir. 2014). But direct appeal is the only opportunity to raise a *Strickland* claim that addresses forfeiture or restitution because a defendant cannot obtain collateral relief for deprivations of property. *See Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). While Vibgyor and Verma have appropriately raised their claim on direct appeal, they have failed to show that their counsel's performance was constitutionally deficient.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, a defendant has to identify specific actions or omissions that "could not be the result of professional judgment." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). This bar is very low: "a counsel's representation 'need not be perfect, indeed not even very good, to be constitutionally adequate.'" *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (citation omitted). Defendants challenge several of their counsel's actions, but none fall outside the objective standards of the profession.

First, defendants argue that counsel should have sought a continuance to familiarize herself with the government's late disclosure of its calculations. At sentencing, defense counsel argued that the late disclosure was not timely, in violation of Federal Rule of Criminal Procedure 32.2(b)(2)(b). The court then asked whether counsel's objection to the timing was a request for a continuance. Counsel responded that a continuance was unnecessary because her team "worked tirelessly yesterday to examine these numbers." Her objection on timing grounds was not made because the late disclosure had left her unprepared. Instead, she clarified that her procedural objection on timeliness underscored the unreliability of the government's calculations. She explained, "[T]he point that we are trying to make, for the record, is that the government continually changed its numbers throughout this process."

It was not constitutionally deficient performance to decline a continuance. If counsel is able to prepare for proceedings without the assistance of a continuance, then the continuance is not necessary. And counsel's performance in the rest of the hearing made clear that she was prepared and had, in fact, "worked tirelessly" to examine the late-breaking disclosure. For example, she

asked detailed questions about Gibson's decision to exclude from his calculations those payments made to a particular business partner. Defendants now argue that the court offered a continuance because some information that the government provided was password protected, meaning that defense counsel did not have access to all of the information that she needed to represent them. In reality, the discussion of password protection came later in sentencing, when defense counsel was challenging the government's decision to rely on bank records rather than individual contracts. That discussion also highlights the fairly sophisticated arguments that defense counsel made, which underscore that it was not deficient for her to forgo requesting a continuance. Further, as the government points out, the decision not to request a continuance certainly could be "the result of professional judgment," *Koons*, 639 F.3d at 351, because delay would also have given the *government* more time to prepare its responses to the defense's preferred calculation. Thus, a strategic decision to proceed without an extension of time is not constitutionally deficient performance.

Defendants' other candidates for defective performance fare no better. They argue that there was a "reasonable probability that the forfeiture amount would have been reduced" but for a handful of other "errors": the failure to prove arguments asserted in defendants' Memorandum in Opposition to the Government's Forfeiture Calculation; the failure to call witnesses to refute the government's method of calculation; the failure to put on evidence that certain military parts involved in the calculation were still usable; and the decision not to call defendant Verma as a witness. But defendants address these actions only in their discussion of the prejudice prong of *Strickland*, not in their discussion of deficiency—they never explain why those actions constitute deficient performance rather than strategic choices. To succeed on their claim, they must demonstrate that those actions constituted deficient performance, not merely that they influenced the outcome at sentencing. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). And it is easy to conceive of legitimate strategic rationales for each of those decisions. *See, e.g., Harrington v. Richter,* 562 U.S. 86, 110–11 (2011) (holding that the failure to put on a competing expert does not constitute deficient performance); *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (noting that "counsel may make a legitimate strategic decision not to call a witness"). We conclude, therefore, that defendants have not shown that their counsel's assistance was ineffective.

AFFIRMED