In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2048

JULIO C. ORTIZ,

*Plaintiff-Appellant*,

*v.*

ZULIMA J. MARTINEZ,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-03634 — **Virginia M. Kendall**, *Judge*.

ARGUED APRIL 21, 2015 — DECIDED JUNE 15, 2015

Before EASTERBROOK and RIPPLE, *Circuit Judges*, and
REAGAN, *District Judge*.[*]

RIPPLE, *Circuit Judge*. Julio C. Ortiz filed a petition under
the Hague Convention on the Civil Aspects of International
Child Abduction ("Hague Convention" or "Convention"),

---

[*] The Honorable Michael J. Reagan, Chief Judge for the Southern
District of Illinois, sitting by designation.

seeking the return of his two minor children, L.O. and A.O., to Mexico City. The children are currently residing in Chicago with Zulima J. Martinez, their mother and the defendant in this action. At trial, the district court denied Mr. Ortiz's petition. Although it found that Ms. Martinez had wrongfully removed the children from Mexico, the court nonetheless determined that an exception to the Convention's mandatory-return rule applied with respect to each child. Mr. Ortiz timely appealed. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

Mr. Ortiz and Ms. Martinez are the parents of two minor children, A.O., a seven-year-old girl, and L.O, a sixteen-year-old boy. Prior to August 2011, Mr. Ortiz and Ms. Martinez lived together with their two children in Mexico City. In August 2011, the couple and their two children travelled to Chicago to visit Ms. Martinez's parents and siblings, all of whom lived in the Chicago area. The couple purchased round-trip tickets, with Mr. Ortiz scheduled to return to Mexico on August 13 and Ms. Martinez and the children scheduled to return on August 20.

Mr. Ortiz returned to Mexico on his scheduled departure date. Ms. Martinez and the children, however, did not. When contacted by Mr. Ortiz, Ms. Martinez informed him that she and the children would not be returning to Mexico. She accused Mr. Ortiz of sexually molesting A.O. and told him that she was keeping the children in the United States for A.O.'s safety.

After attempting, unsuccessfully, to convince Ms. Martinez to return to Mexico with their children, Mr. Ortiz filed this action in the district court in May 2012, under the Hague Convention, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, seeking the return of their two children to Mexico City for a determination of his custody rights. Ms. Martinez answered the petition, submitting that Mr. Ortiz had failed to establish that the children had been wrongfully removed. She also asserted three affirmative defenses. First, she asserted that Mr. Ortiz had acquiesced to her retention of the children in the United States, thereby permitting the district court to deny return of their children pursuant to Article 13(a) of the Convention. Second, invoking Article 13(b) of the Convention, she submitted that the children faced a grave risk of harm if returned to Mexico based on Mr. Ortiz's prior sexual abuse of A.O. and prior emotional abuse of L.O.[1] Finally, invoking Article 20 of the Convention, she asserted that return of the children to Mexico was improper "because it would contravene the laws of the State of Illinois, the United States Constitution, and fundamental principles of human rights to return the children to their abusing father."[2]

Because the case involved allegations of sexual abuse, attorneys for both parties agreed that the court should appoint a psychologist to evaluate the children. At the parties' joint suggestion, the court appointed Dr. Hector S. Machabanski,

---

[1] Ms. Martinez alleged that Mr. Ortiz "caused psychological harm to L.O. directly, by being emotionally abusive to [her], and by sexually and psychologically abusing A.O." R.17 at 14.

[2] *Id.* at 15–16.

a psychologist with experience in working with children, as an expert in the case. The district court defined Dr. Machabanski's role as follows:

> The role of the Rule 706 Expert shall be to evaluate the minor children in this case and to review any related materials; to prepare a report on the allegations raised in Respondent's Second and Third Affirmative Defenses; and prepare any further reports or assistance as the Court may direct.[3]

In February 2013, Ms. Martinez filed a motion to amend her answer in order to add a fourth affirmative defense. Invoking Article 13's so-called "wishes of the child" exception, Ms. Martinez asserted that L.O. had expressed a desire to remain in the United States and that, given his age and maturity, the court should consider his wishes.

Mr. Ortiz opposed the motion. He submitted that Ms. Martinez's attempt to raise the defense was untimely and that to allow it would prejudice his ability to prepare for trial, which at that point was less than one month away. Further, he noted that Dr. Machabanski had just completed his last session with the children and that his evaluation had *not* included a specific assessment of L.O.'s ability to make mature decisions about where to live.

In May 2013, the district court held a three-day hearing on Mr. Ortiz's petition. It heard testimony from Ms. Martinez, Mr. Ortiz, and members of their extended family. The

---

[3] R.21 at 1; *see* Fed. R. Evid. 706.

court also conducted in camera interviews with L.O. and
A.O. and received the expert report and testimony of
Dr. Machabanski.

During the hearing, the district court heard substantial
evidence indicating that Mr. Ortiz had sexually abused A.O.
Ms. Martinez testified that she had witnessed Mr. Ortiz in-
appropriately touching their daughter in her vaginal area
and had frequently observed signs of such abuse. The dis-
trict court summarized her testimony as follows:

> [Martinez] testified about her relation-
> ship with Ortiz and the sexual abuse of A.O.
> that she witnessed. She stated that the abuse of
> A.O. was the basis for her decision to flee to
> the United States and described what occurred
> between the abuse and the actual travel to Chi-
> cago. Shortly after A.O. was born, [Martinez]
> noticed that A.O. had repeated rashes in the
> vaginal area. She took her to a doctor as a baby
> but had been told it was likely diaper rash and
> was prescribed a cream. After the doctor's visit
> [Martinez] stopped giving A.O. any dairy
> products in order to eliminate dairy as a poten-
> tial source of the rashes. Then the rashes began
> to reappear in the summer of 2010.
>
> [Martinez] first witnessed what she per-
> ceived to be inappropriate contact between
> Ortiz and their daughter A.O. when A.O. was
> three years old. Ortiz regularly bathed A.O. on
> the weekends, starting in late spring or sum-
> mer of 2010. [Martinez] had noticed that A.O.
> was happy and cooperative during the week

but that on the weekends she would become anxious and not want to shower. In the second or third week of August 2010, [Martinez] twice entered the bathroom when Ortiz was bathing A.O. In the first instance, she discovered A.O. naked and against the wall and Ortiz on his knees, naked, in front of her. The shower was not falling on A.O. and Ortiz was touching her with his right hand between her legs, without soap or a towel. Ortiz was very surprised when [Martinez] opened the door. [Martinez] was in shock and took A.O. away to her room immediately but did not confront Ortiz. Initially, [Martinez] did not think that Ortiz could have done this and testified that it was difficult to accept. A week later, when Ortiz told A.O. it was time to shower, [Martinez] perceived that A.O. looked to her for help, with her finger over her mouth, and [Martinez] nodded to her. After A.O. went into the shower with her father, [Martinez] followed into the bathroom immediately and overheard A.O. telling her father not to touch her private area anymore. [Martinez] immediately took A.O. from the shower again.

[Martinez] did not talk to anyone about the incidents and admitted at trial that she did not do so because she was ashamed and had difficulty comprehending it herself. She prohibited Ortiz from showering with A.O. and assumed that she had solved the problem, but A.O. continued to have vaginal rashes. She

asked her daughter about the rashes a few weeks later and her daughter said that her father had touched her again. [Martinez] concluded that it must be happening during the night and therefore she began to sleep between Ortiz and their daughter's crib which was located in the same room. In December 2010, [Martinez] asked Ortiz for a separation that she be permitted to take the kids to the United States. He stated that she should leave alone and leave the children with him until things were stable in the United States at which point he would send them. Ortiz held the family's passports at his office. [Martinez] would repeatedly ask him to give them to her but he did not bring them back from the office. [Martinez] did not go to the police or the other authorities because she believed that given her husband's connections with law enforcement officials through the law classes he had taken and through his job, her allegations would either not be respected or Ortiz would pay the corrupt authorities to keep the allegations silent.[4]

A.O. corroborated this testimony during her in camera interview, explaining, with words and gestures, how her father had put his finger in her vaginal area while the two were showering. Dr. Machabanski further substantiated these allegations. At trial, Dr. Machabanski testified that

---

[4] R.72 at 4–6 (footnote omitted) (citations omitted).

A.O. exhibited behavior consistent with having suffered sexual abuse. As detailed in his report, A.O. also exhibited strong negative emotions toward her father through her playtime behavior. Based on these and other factors, Dr. Machabanski testified that, in his "professional opinion, [A.O.] was telling the truth."[5]

In August 2013, the district court issued a written order denying Mr. Ortiz's petition. Although it determined that Ms. Martinez had wrongfully removed the children, the court nonetheless concluded that an exception to the Convention's mandatory-return rule applied for each child. With respect to A.O., the court determined that Ms. Martinez had presented sufficient evidence to establish the "grave risk" defense under Article 13(b). The court credited Ms. Martinez's evidence that Mr. Ortiz previously had molested A.O. and, based on that abuse, determined that A.O. would face a grave risk of similar harm by her father if returned to Mexico. The court explained the reasoning for its credibility findings as follows:

> The Court finds A.O. to be a bright and credible young girl. She looked directly at the Court, responded to questions without fabrication to basic inquiries regarding pets, colors, and relationships, and generally acted cooperatively and spontaneously as opposed to a child who has been coached to use certain terms, expressions, or statements. The Court has considerable expertise in the area of interviewing mi-

---

[5] R.76 at 10.

nor victims of sexual abuse and did not find any indicators that would suggest fear of telling the truth to the Court or of coached testimony. Of considerable merit is A.O.'s description of the personal hiding place that she would run to after abuse—a place not mentioned by any other individual in the case which corroborates that the actions took place and she sought a place of solace afterward.

….

Finally [Martinez] testified in a credible manner also and used terms that were different than the terms used by her minor daughter. She was most credible when asked about her reasons for not reporting the abuse to the authorities in Mexico when she was there. It was clear to her that since her husband held a position of authority that she would not be believed and that she would actually be placing the children in greater harm if she could not be the one to get them out of the abusive relationship. Her testimony regarding how her husband maintained the passports at work so that she could not act on her own, and then how she placated him to finally allow the trip to the United States is consistent with the timing of the reporting and with her sister's testimony.

….

Given the testimony supporting a finding of grave risk to A.O., the Court is also high-

> ly concerned with the potential for furtherance of the risk if the Court were to order the children returned to Mexico for custody. [Martinez], who has no funds and no job of her own and whose family resides in the United States, would almost certainly not have the means to reside independently from Ortiz while custody was determined.[6]

The district court's decision with regard to L.O. was slightly more complicated. The court started its analysis by denying Ms. Martinez's motion to amend her answer. In doing so, the court ruled that "consideration of the wishes of the child [was] not an appropriate affirmative defense" under the Hague Convention.[7] Rather, according to the court, the "wishes of the child" was a "consideration" and an "exception" under the Convention, which the court had "independent authority" to consider.[8] Invoking this authority, the district court independently found that L.O. was old enough and mature enough such that his desire to remain in the United States should be credited. Based on these findings, the district court denied Mr. Ortiz's petition.

Shortly thereafter, Mr. Ortiz filed a motion for a new trial, asserting that the district court's findings were against the manifest weight of the evidence. Specifically, he submitted that the evidence of sexual abuse in the case lacked credibil-

---

[6] R.72 at 20–22 (footnote omitted).

[7] *Id.* at 23 n.3.

[8] *Id.*

ity and thus that Ms. Martinez had failed to sustain her burden of proof with respect to her grave risk defense.

The district court denied the motion. In doing so, it again considered and rejected Mr. Ortiz's various credibility arguments:

> Here, the court conducted a three-day evidentiary hearing. Petitioner challenges the sufficiency of the evidence weighed by the court, arguing that the Respondent failed to offer documentary or physical evidence of sexual abuse. However, one does not have to provide documentary or physical evidence of sexual abuse when there is testimony that is corroborated by multiple witnesses. *See Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006).
>
> [The court reviews the evidence of abuse.]
>
> The Petitioner claims that the Respondent remained in the same home as Petitioner after she witnessed the alleged abuse, and that such "self-serving statements tell a story that strains credulity." Petitioner also accuses Respondent of having sufficient time to coerce A.O. into falsely testifying about the alleged abuse. The record supports the unique form of manipulation inflicted upon the Respondent by holding the family's passports and not allowing her to flee or to report to public officials with who he was uniquely affiliated. This

unique manipulation is more than adequately
addressed in the record and explains any delay
in reporting the abuse which was done imme-
diately upon arrival in a safe place. As the fact
finder, the Court properly weighed the evi-
dence and credibility of the witnesses and
found that the children would face a grave risk
of harm if ordered to return to Mexico. Peti-
tioner has failed to present any new facts or
law to change the Court's holding.[9]

Mr. Ortiz now appeals.[10]

## II

## DISCUSSION

On appeal, Mr. Ortiz challenges only the district court's
ruling with respect to A.O.[11] In particular, he contends that

---

[9] R.86 at 5–7 (record citations omitted).

[10] The district court's jurisdiction was premised on 22 U.S.C. § 9003(a)
and 28 U.S.C. § 1331. Our jurisdiction is secure under 28 U.S.C. § 1291.

[11] Originally, Mr. Ortiz also challenged the district court's ruling with
regard to L.O. In particular, he asserted that the wishes-of-the-child ex-
ception was an affirmative defense and that the district court had erred
by raising and deciding that defense on its own initiative.

By the time of oral argument, however, L.O. was ten days away from
his sixteenth birthday (May 1, 2015). Because the Hague Convention
"cease[s] to apply when [a] child attains the age of 16 years," Hague
Convention, art. 4, Oct. 25, 1980, T.I.A.S. No. 11,670, we asked the parties
at oral argument to submit supplemental briefs addressing the issue of
whether L.O.'s upcoming birthday would render his portion of the case
moot. On May 5, 2015, Mr. Ortiz filed a motion in this court seeking "to
(continued...)

the district court erred in finding that he had sexually abused A.O. and thus that she faced a grave risk of harm if returned to Mexico. We review the district court's factual findings for clear error and its conclusion that those facts establish a grave risk of harm de novo. *See Norinder v. Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011). Under the clear error standard, we will not overturn the district court's factual findings unless, after reviewing all the evidence, we are "left with [a] definite and firm conviction that a mistake has been [made]." *Graber v. Clarke*, 763 F.3d 888, 894 (7th Cir. 2014) (internal quotation marks omitted).

"The Hague Convention is an anti-abduction treaty." *Redmond v. Redmond*, 724 F.3d 729, 739 (7th Cir. 2013). It was designed "to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012). To this end, the Convention employs a "remedy of return," *Khan v. Fatima*, 680 F.3d 781, 783 (7th Cir. 2012) (internal quotation marks omitted), which "entitles a person whose child has wrongfully been removed to the United States in violation of the Convention to petition for return of the child to the child's country of 'habitual residence,'" *Norinder*, 657 F.3d at 529. A court's role in enforcing the Convention is not to settle a custody dispute between the parties,

---

(...continued)
voluntarily dismiss that portion of his appeal related to the return of L.O. as moot." App. R. 32 at 2. We grant Mr. Ortiz's request and therefore do not consider this issue further.

"but rather to restore the status quo prior to any wrongful removal or retention." *Redmond*, 724 F.3d at 739.

The Convention's mandatory-return rule is subject to several narrowly drawn exceptions. One such exception is the affirmative defense of grave risk:

> [T]he judicial or administrative authority of the requested State is not bound to order the re-turn of the child if the person, institution or other body which opposes its return establish-es that—
>
> …
>
> b   there is a grave risk that his or her return would expose the child to physical or psycho-logical harm or otherwise place the child in an intolerable situation.

Hague Convention, art. 13(b), Oct. 25, 1980, T.I.A.S. No. 11,670. Sexual abuse most certainly constitutes a "grave risk" of physical or psychological harm. Similarly, sexual abuse, particularly by a custodial parent, is a well-recognized ex-ample of an "intolerable situation" within the meaning of this exception. *See In re Application of Adan*, 437 F.3d 381, 395 (3d Cir. 2006); *Danaipour v. McLarey*, 286 F.3d 1, 16 (1st Cir. 2002); U.S. Dep't of State, Hague International Child Abduc-tion Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510 (Mar. 26, 1986). The party opposing the return of a child has the burden of establishing this exception by clear and convincing evidence. 22 U.S.C. § 9003(e)(2)(A).

Mr. Ortiz does not contest the district court's legal con-clusion that the sexual abuse of which he is accused consti-tutes a "grave risk" under the Convention. Rather, he chal-

lenges only whether the district court's *factual* determination that he sexually abused his daughter meets the "clear and convincing" standard. Specifically, he contends that this finding was based on unreliable evidence and thus was clearly erroneous. In response, Ms. Martinez submits that the evidence of record amply supports the district court's factual findings and that Mr. Ortiz's credibility arguments are insufficient to establish clear error.

We agree with Ms. Martinez. In making its determination, the district court explicitly acknowledged that Ms. Martinez had to meet the demanding "clear and convincing" standard. Here, the evidence of sexual abuse was substantial and certainly sufficient to meet that exacting standard. During her testimony, Ms. Martinez described, in detail, how she had seen Mr. Ortiz molesting A.O. in the shower and how, on a separate occasion, she had overheard A.O. tell her father, while the two were showering, not to touch her private areas anymore. This testimony was consistent with A.O.'s description of events during her in camera interview. Finally, in his expert testimony and report, Dr. Machabanski opined (1) that A.O. exhibited behavior consistent with having suffered sexual abuse; (2) that she exhibited strong negative emotions toward her father through her playtime behavior; and (3) that, in his "professional opinion, she was telling the truth."[12]

Mr. Ortiz nonetheless contends that the evidence is so lacking in credibility that the court's decision to credit it amounts to clear error. He contends, for example, that

---

[12] R.76 at 10.

Ms. Martinez's testimony is uncorroborated, that her true motive for fleeing to the United States was because she had discovered that he was having an affair and that she had "brainwashed and coached A.O." on what to say during her in camera interview.[13] He also attacks Dr. Machabanski's testimony as "unreliable," asserting that it was "based upon insufficient facts and data."[14]

The district court, however, heard and rejected these arguments and, in doing so, certainly did not commit clear error. As the Supreme Court has noted, the clear error standard "demands even greater deference to" a district court's factual findings "[w]hen [those] findings are based on determinations regarding the credibility of witnesses." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). As a practical matter, this means that such findings "can virtually never be clear error," unless premised on testimony that is "internally inconsistent," facially implausible, or "contradicted by extrinsic evidence." *Id.*; *accord Kanter v. Comm'r*, 590 F.3d 410, 417–18 (7th Cir. 2009). In other words, a district court's credibility findings are "binding on appeal unless the [court] has chosen to credit *exceedingly* improbable testimony." *United States v. Warner*, 498 F.3d 666, 678 (7th Cir. 2007)

---

[13] Appellant's Br. 14. Mr. Ortiz's attempts to undermine the in camera statements of his daughter were matters to be weighed by the trial judge. The trial judge was on solid ground in rejecting those efforts and accepting the daughter's statements.

[14] *Id.* at 15–16. Mr. Ortiz does not contend that the district court erred by admitting Dr. Machabanski's testimony. Rather, he merely submits that the court "should have credited [Dr. Machabanski's] findings very scantly." *Id.* at 16.

(emphasis in original) (internal quotation marks omitted). "Discrepancies arising from impeachment, inconsistent prior statements, or the existence of a motive do not render witness testimony legally incredible." *Whitehead v. Bond*, 680 F.3d 919, 926 (7th Cir. 2012) (internal quotation marks omitted).

Mr. Ortiz's various credibility arguments fail under this exacting standard. The district court carefully considered all of these arguments. It heard the witnesses' testimony and evaluated their credibility first hand. None of Mr. Ortiz's contentions are sufficient to render the evidence credited by the district court "legally incredible." *See id.*[15] Consequently, we conclude that the district court did not clearly err in finding that Mr. Ortiz had sexually abused A.O. Because Ms. Martinez's presented sufficient evidence to establish the

---

[15] *See also United States v. Taylor*, 701 F.3d 1166, 1174 (7th Cir. 2012) ("To find a witness's testimony to be incredible as a matter of law, it must have been physically impossible for the witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all." (internal quotation marks omitted)); *United States v. Freeman*, 691 F.3d 893, 900 (7th Cir. 2012) ("Testimony is not incredible as a matter of law only because the witness may have been impeached by certain discrepancies in her story, by prior inconsistent statements, or by the existence of a motive to provide evidence favorable to the government." (alterations omitted) (internal quotation marks omitted)); *United States v. Calabrese*, 572 F.3d 362, 369 (7th Cir. 2009) (noting that "relatively minor inconsistencies" in a witness's testimony are incapable "of rendering [that] testimony legally incredible"); *United States v. Jensen*, 169 F.3d 1044, 1047 (7th Cir. 1999) ("Witnesses are not incredible as a matter of law simply because they have been impeached on trivial, irrelevant matters.").

"grave risk" exception, the district court properly denied Mr. Ortiz's petition.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED