In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-3147

JOHN ERICKSON COAHUILA HERNANDEZ,

*Plaintiff-Appellant*,

*v.*

IRMA BENITEZ CARDOSO,

*Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-11460 — **Sharon Johnson Coleman**, *Judge*.

_____

ARGUED DECEMBER 7, 2016 — DECIDED DECEMBER 22, 2016

_____

Before BAUER and FLAUM, *Circuit Judges*, and SHADID, *Chief District Court Judge*.[*]

SHADID, *Chief District Court Judge*. Plaintiff-Appellant John Erickson Coahuila Hernandez ("Hernandez") and Defendant-Appellee Irma Benitez Cardoso ("Cardoso") are both citizens of Mexico. They met sometime in 2001 and

_____

[*] Of the Central District of Illinois, sitting by designation.

began cohabitating sometime later that year. They resided in Mexico until December 15, 2014. They are the biological parents of two children: A.E., born in 2008, and M.S., born in 2002.

Cardoso claims to have left Mexico with A.E. and M.S. in December of 2014 to escape abuse from Hernandez and protect the children. Subsequently, Hernandez learned of Cardoso's location in Chicago, Illinois, and on July 17, 2015, filed an application with the Mexican Central Authority for the return of A.E. pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (hereinafter, "the Convention"). The Mexican Central Authority transmitted Hernandez's Application to the United States.

In August of 2015, Cardoso agreed to return M.S. to Hernandez. Hernandez also requested the return of A.E. but Cardoso refused.

On December 18, 2015, Hernandez filed a Verified Petition for Return of Minor Child to Mexico and Issuance of a Show Cause Order. On February 29, 2016, the District Court held an evidentiary hearing, at which Hernandez, Cardoso and Alma Cardoso, Cardoso's sister, testified. Following the testimony of all witnesses, the Court *sua sponte*, and without objection from either party, took testimony from the child, in chambers, and outside the presence of counsel or the parties. After questioning of the child, the District Court allowed both parties until March 14, 2016, to file objections to any questions posed to the child. Neither party filed any such objections.

Following the evidentiary hearing, the District Court allowed briefing and then entered its Order on July 13, 2016. In its Order, the District Court found that Cardoso testified

credibly that Hernandez would hit her in the presence of A.E. with the intention of having A.E. witness the abuse of his mother. The District Court also specifically noted it observed a significant change in the demeanor of A.E. when the child discussed Hernandez, the domestic violence and the possible return to Hernandez's custody. The District Court found that Cardoso and AE's testimony about the domestic violence, taken as true, provides clear and convincing evidence that there is a grave risk of physical or psychological harm to A.E. if he is returned to Hernandez's custody. This appeal followed.

The Hague Convention "was adopted in 1980 in response to the problem of international child abduction during domestic disputes." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). "The United States is a contracting state to the Convention, and Congress has implemented its provisions through the International Child Abduction Remedies Act (ICARA) … 42 U.S.C. § 11601 *et seq*." 560 U.S. at 5. As the Court noted in *Abbott*, "[t]he Convention provides that a child abducted in violation of 'rights of custody' must be returned to the child's country of habitual residence, unless certain exceptions apply. Art. 1 S. Treaty Doc. No. 99-11, at 7." 560 U.S. at 5. The intention of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State … to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States. Art. 1, Treaty Doc. at 7." *Abbott*, 560 U.S. at 7.

ICARA instructs a person who seeks a child's return to file a petition in state or federal court and further instructs the

court hearing the case to decide it in accordance with the Hague Convention. *See* 42 U.S.C. §§ 11603(a), (b), (d). The elements to the *prima facie* cause of action for return are: the child was wrongfully removed or retained; the child was removed from his or her habitual residence; there was a breach of the rights of custody under the law of the child's habitual residence; the left-behind parent was exercising those custody rights; and the child is under the age of sixteen. If the child in question has been wrongfully removed or retained within the meaning of the Convention, the child shall be promptly returned unless an exception is applicable. *See* 42 U.S.C. § 11601(a)(4).

The Hague Convention sets forth several affirmative defenses. The affirmative defense relevant to this proceeding is a grave risk of exposure to serious physical or psychological harm. Article 13(b) provides that "when there is a grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation, the automatic return required by the Convention should not go forward." *Norinder v. Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011). Here, Cardoso admits that Hernandez did not agree that she could permanently relocate the United States with the children.

Because Cardoso did not dispute that Hernandez established a *prima facie* case for wrongful removal, the District Court correctly limited its findings to the "grave risk of harm" exception raised by Cardoso.

This Court reviews the District Court's findings of fact for clear error. *Norinder*, 657 F.3d at 533. Rule 52(a)(1) of the Federal Rules of Civil Procedure requires the judge to "find

the facts specially and state conclusions of law separately" when (s)he is the trier of fact.

The issue presented for review is whether the District Court erred in concluding that Cardoso proved, by clear and convincing evidence, that there is a grave risk of physical or psychological harm to A.E. if he is returned to Mexico. Not surprisingly, the parties provide different factual backgrounds.

Hernandez claims error occurred by the District Court's reliance on (1) incidents of Coahuila's corporal punishment of A.E. with a belt when Cardoso admitted she has done the same thing; (2) incidents of alleged spousal abuse by Coahuila when the only specific incident alleged occurred in 2004; and (3) A.E.'s "changed demeanor" in discussing these issues *ex parte* with the Court. In addition, Hernandez argues that Cardoso admitted she voluntarily returned M.S. to Hernandez's care and presented no evidence that he posed a danger to their daughter.

Cardoso claims a continuous pattern of abuse at the hands of Hernandez, beginning shortly after the birth of M.S. in 2002, when Cardoso claims she learned that Hernandez was already married. Cardoso claims that in March of 2004 Hernandez slapped, kicked and beat her with a wooden board in front of M.S., after which he proceeded to rape her. She testified that he would "always do that [rape her] when he would hit" her because "to him it was like make me happy."

She further testified that Hernandez would engage in the abuse in the presence of the children. If Cardoso tried to

ensure the children not witness the violence, Hernandez would insist that the children remain and observe the abuse.

The District Court found that both Hernandez and Cardoso used physical discipline of the children, but the parties' dispute whose discipline was more forceful. Hernandez testified that he would spank the children with an open hand and described Cardoso's physical discipline as "more harsh" because she would pull her daughter's hair and "really fight with her." Cardoso testified that she would spank the children with her hand or with a shoe. She objected to the way Hernandez disciplined the children, because it was "too much" and he would "hit them very hard" with a belt. Hernandez denied ever using a belt to discipline the children.

The District Court questioned A.E. *in camera* during the evidentiary hearing held on February 29, 2016. A.E. testified that Hernandez would hit him with a belt if he misbehaved "really bad." He further testified that he saw Hernandez hit Cardoso with a belt and with his hands and saw him give Cardoso a black eye. A.E. said he was "a little bit" afraid of Hernandez.

The District Judge was in the best position to observe the demeanor of the witnesses and determine credibility, and her credibility determinations are entitled to deference unless they are clearly erroneous. "Under the clear error standard, we will not overturn the district court's factual findings unless, after reviewing all the evidence, we are 'left with [a] definite and firm conviction that a mistake has been [made].'" *Ortiz v. Martinez*, 789 F.3d 722, 728 (7th Cir. 2015). "In other words, a district court's credibility findings are 'binding on appeal unless the [court] has chosen to credit *exceedingly*

improbable testimony.'" *Id.* at 729. Furthermore, "[d]iscrepancies arising from impeachment, inconsistent prior statements, or the existence of a motive do not render witness testimony legally incredible." *Id.*

The District Judge determined that Cardoso's testimony that Hernandez abused her repeatedly and in the presence of the children was credible, despite the fact that she allowed her daughter to return to Mexico to live with Hernandez and provided inconsistent testimony about whether Hernandez knew she would leave Mexico with the children. Cardoso's testimony about the abuse was corroborated by A.E., who testified of Hernandez's physical abuse toward Cardoso and himself. With the deference given to the District Court, the Court finds there was no error in the lower court's credibility determination.

Moreover, the District Court's application of the facts in this case to the Article 13(b) "grave risk" standard was appropriate. We have previously held that "repeated physical and psychological abuse of a child's mother by the child's father, in the presence of the child (especially a very young child, as in this case), is likely to create a risk of psychological harm to the child." *Khan v. Fatima*, 680 F.3d 781, 787 (7th Cir. 2012). The District Court recognized it had to consider "risk in the father's behavior toward the mother in the child's presence" in its analysis. *Id.* This Court having found the District Court's credibility determination was sound, finds that the factual findings made by the lower court support the conclusion that there was a "grave risk" of physical or psychological harm to A.E. if he was returned to Hernandez's custody.

The District Judge's opinion indicates that she considered all the evidence, which included the facts and credibility of the witnesses, before concluding that the risk of harm to the child was grave.

AFFIRMED