NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 22, 2020[*]
Decided July 8, 2020

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

Nos. 19-3247 & 19-3248

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeals from the United States District Court for the Central District of Illinois. |
| *v.* | Nos. 3-98-cr-30050-1 & 3-19-cr-30016-1 |
| EUNICE HUSBAND, *Defendant-Appellant*. | **Sue E. Myerscough**, *Judge*. |

## O R D E R

Months after he was released from prison, the government charged that Eunice Husband committed a battery. The government sought revocation of his terms of supervised release. After continuances delayed the revocation hearings, the district court found that Husband had violated his terms of release, revoked his release, and re-sentenced him. Husband challenges both the revocation order and new sentences. We

---

[*] We have agreed to decide these cases without oral argument because the briefs and records adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

affirm. The continuances were harmless, the finding of a violation justified, and the sentences reasonable.

In 2018 Husband began serving terms of supervised release for two federal convictions. In 1998, he was charged with a drug offense and, after pleading guilty, sentenced to 10 years in prison and 8 years of supervised release. While still in prison in 2009, he was convicted of possessing a weapon and drugs with the intent to distribute. For that, he was then sentenced to 10 more years in prison and 4 years of supervised release. He left prison in June 2018.

Nine months after he began his terms of supervised release, Husband reportedly punched and beat Keith Davis, leading to the petition to revoke his release. Davis had let Husband share his apartment, and the two clashed over property that Husband left in the apartment. Husband knocked Davis down and hit him with a cane, causing multiple injuries. After state battery charges were filed and a local warrant for arrest issued, the government petitioned to revoke Husband's two terms of release. (Although the petition referred to both Husband's 1998 and 2009 cases, it was docketed only under his 1998 case.) Husband was then arrested on a federal warrant on May 22. The court appointed him counsel, held preliminary hearings over the next two days (without referring to his 2009 case), and set his revocation hearing for July 8.

A series of continuances delayed his final revocation hearing for five months. In July, counsel for Husband stated that Husband "affirmatively waive[d] his right to an earlier revocation hearing" and successfully moved to continue the hearing in order to investigate the case. The court set the hearing for August 2 but later reset it to August 28 because of its own scheduling conflict. The government then filed an unopposed motion to continue the hearing, noting that Husband's state case, scheduled for trial, might avoid the need for a contested revocation hearing. The court continued the hearing to October. After the state battery case was dismissed (Davis did not appear to testify), the government sought, over Husband's objection, a two-week continuance to locate a witness to the battery. The court granted the motion, continuing the hearing to November 1. The hearing was rescheduled for a week later because of a scheduling conflict with Husband's counsel.

By the time of the revocation hearing in November, the district court realized that, although the petition listed both of Husband's cases, the court had held hearings only on the 1998 case. To make the record clear, the court held the initial appearance for the 2009 case just before the scheduled revocation hearing. Husband's counsel reported that Husband believed that this delay in the initial hearing for the 2009 case violated

Federal Rule of Criminal Procedure 32.1. But counsel "declined" to contest the delay; she explained that she told Husband that she could not identify any "non-frivolous arguments" about the timing of the hearing on the 2009 case.

Husband's revocation hearings followed. Both Davis (the government's witness) and Husband testified. Davis stated that on March 5 Husband beat him after an argument over papers that Husband had left in the apartment they had shared. The government also offered four photographs the police took of Davis's injuries the day after the battery. Husband denied Davis's account, stating that he did not even see Davis that day. In closing argument, Husband's counsel contended that Husband was the more credible witness, noting Davis's past drug use and some inconsistencies in his testimony. The district court disagreed and found that Husband had violated the conditions of his two terms of supervised release by committing the battery and revoked both terms of release. It sentenced Husband to a within-Guidelines range of 20 months' imprisonment and 7 years of supervised release for both cases.

We have consolidated Husband's appeals from both cases; he first contends that the five-month delay in his hearings violated his rights to due process. This contention faces insuperable problems. First, Rule 32.1(a)(1) and (b)(2) govern the timing of hearings, and they require only that the initial appearance and revocation hearing occur without "unnecessary delay" and "within a reasonable time." Husband does not challenge the constitutionality of this rule. Second, Husband waived any argument about delay. When he moved to continue his revocation hearing in July, counsel stated that Husband "affirmatively waive[d]" his right to an earlier hearing, citing Rule 32.1(b)(2), and he requested or did not oppose three months of extensions. Although he contested one two-week continuance that the government later requested, at his initial appearance in November on the 2009 case, counsel said that she "declined" to contest any delay because she had no "non-frivolous arguments" to raise.

Even if we considered Husband to have merely forfeited a contention that Rule 32.1 was violated, he cannot satisfy plain-error review. *See United States v. Grayson Enters., Inc.*, 950 F.3d 386, 400 (7th Cir. 2020). It is not obvious that the five-month delay between his initial appearance and revocation hearings was unreasonable. *See United States v. Rasmussen*, 881 F.2d 395, 398–400 (7th Cir. 1989) (discussing factors to assess delay of revocation proceedings). As just stated, Husband was responsible for almost three months of delay, having moved to continue the hearing to investigate the case and not opposed the government's similar motion when his state case was going to trial. Regarding the delay in his initial appearance for the 2009 case, Husband cannot identify prejudice from it. *See Grayson Enters.*, 950 F.3d at 400. He asserts incorrectly

that, because of the delay, he was not timely appointed counsel. The district court appointed him counsel at his May initial appearance, the day after his arrest on the federal warrant. (Husband may be conflating his arrests by state and federal authorities. He was arrested by state authorities on the battery charge in March, but his arrest on the federal warrant was on May 22. Only the latter is relevant to his federal revocation proceedings.) Husband also cites *United States v. Pagan-Rodriguez*, 600 F.3d 39, 41–42 (1st Cir. 2010), where the court concluded that a 12-month delay was unreasonable. But that delay was more than twice as long as here and, unlike here, the defendant had not consented to any of it. *Id.* at 42.

Moving on from his procedural objections, Husband argues that the district court erred in finding that he battered Davis, arguing that Davis's testimony was not credible or substantiated. He points us to counsel's efforts to impeach Davis and the government's lack of "Medical Documentation" to support the injuries. But we do not easily disturb a court's factual finding based on a credibility determination. *Ortiz v. Martinez*, 789 F.3d 722, 729 (7th Cir. 2015). Here, the district court observed Davis's and Husband's conflicting testimony, evaluated their credibility firsthand, and received corroborating photos of Davis's injuries taken the day after the attack. With this corroboration, Davis's testimony was not "legally incredible" and adequately supported the district court's findings. *Id.* (quoting *Whitehead v. Bond*, 680 F.3d 919, 926 (7th Cir. 2012)).

Husband also challenges his sentences on two grounds. He first argues that the district court miscalculated his new term of supervised release for his 1998 case because it exceeds the maximum term authorized by 18 U.S.C. § 3583(e)(3). But this section sets forth a maximum term of *imprisonment* after a revocation of supervised release. Any new term of supervised release, on the other hand, is not to exceed the term "authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release." 18 U.S.C. § 3583(h). Husband was sentenced under 21 U.S.C. § 841(b)(1)(B), which imposes a minimum 8-year term of supervised release. His new 7-year term of supervised release for the 1998 case does not exceed even the minimum term of supervised release required under § 841(b)(1)(B) because he was sentenced to only 8 months in prison.

Husband also contends that his prison sentences are too high. He observes that he committed only a Grade C violation, notes that the state dismissed the battery charge, and contends that his sentences reflect unwarranted disparities among similar defendants. But sentences like his, falling within the Guidelines policy statement

ranges, are presumptively reasonable, *see United States v. Jones*, 774 F.3d 399, 404 (7th Cir. 2014), because they "necessarily" comply with the goal of avoiding unwarranted disparities, *United States v. Bartlett*, 567 F.3d 901, 907–09 (7th Cir. 2009). And nothing in the record rebuts that presumption here. The district court adequately considered the 18 U.S.C. § 3553(a) factors, including the nature of his violation and the dismissal of the state charge. But it also permissibly relied heavily on Husband's history of violence (even while in prison he had numerous citations for fighting, assault, and threatening bodily harm) and the need to deter him from more criminal conduct. The sentence is reasonable.

Husband raises two final contentions. First, he argues that his appointed counsel was ineffective by not challenging the hearing delays, by failing to object to evidence at his hearing, and by not calling favorable witnesses. To address these arguments fully, we would need to augment the record with extrinsic evidence, which we may not do on direct appeal. *See Delatorre v. United States*, 847 F.3d 837, 844 (7th Cir. 2017). For this reason, claims of ineffective assistance "are almost 'invariably doom[ed]' on direct review" and are better saved for collateral review. *Id.* (quoting *United States v. Gilliam*, 255 F.3d 428, 437 (7th Cir. 2001)); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Eskridge*, 445 F.3d 930, 932 (7th Cir. 2006). Husband has not given us adequate assurance that he wants to forgo collateral review, so we do not pass on these contentions. Finally, Husband argues that the district court's adverse rulings and hearing-management decisions reflect its bias against him. But unfavorable rulings and reasonable methods of managing hearings are not themselves proof of impermissible partiality. *See Liteky v. United States*, 510 U.S. 540, 555–56 (1994).

We have considered Husband's other arguments, and none has merit.

AFFIRMED.