In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-2107

STEVE STEVENSON,

*Plaintiff-Appellant,*

*v.*

WINDMOELLER & HOELSCHER CORP.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-00052 — **John Robert Blakey**, *Judge.*

ARGUED FEBRUARY 17, 2022 — DECIDED JULY 7, 2022

Before ROVNER, HAMILTON, and ST. EVE, *Circuit Judges*.

ROVNER, *Circuit Judge.* Plaintiff Steve Stevenson appeals the district court's decision in this product-liability action not to appoint a neutral expert pursuant to Federal Rule of Evidence 706. Finding no abuse of discretion in the court's decision, we affirm.

## I.

Stevenson was injured in the course of his employment with a commercial printing company. He was moving a portable ladder in order to clean a component of a Primaflex printing press, manufactured by defendant Windmoeller & Hoelscher Corporation, that prints flexible packaging for consumer goods such as bread and potato chips. The printing press is a large machine measuring some 53 feet long and 17 feet high. The ladder Stevenson was handling was one of two supplied with the machine, and its use was necessary in order to reach an otherwise out-of-reach printing plate on the upper level of the machine's interior. As Stevenson moved the ladder, it caught on the 10-foot cable of an operator pendant attached to the machine, which caused him to twist and injure his left shoulder and back. He later had surgery as a result of the injury.

Stevenson filed this product-liability suit against Windmoeller on theories of negligence and strict liability, arguing that the design of the printing press—including the placement of the 10-foot cable near the access door used to service the interior components of the machine—was defective, in that it foreseeably gave rise to the very scenario that injured Stevenson: the ladder catching on the cable.

Shortly after the close of fact discovery, Stevenson's court-appointed counsel[1] filed a motion asking the court to appoint

---

[1] Stevenson's original counsel withdrew shortly after this suit was removed from state to federal court. Stevenson proceeded pro se for approximately
(continued...)

an engineering expert[2] pursuant to Fed. R. Evid. 706, which in relevant part provides:

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

Rule 706(a). This rule codifies the inherent power of a trial judge to appoint an expert who will function as a neutral expert serving the court rather than any particular party. *See* 29 Charles A. Wright & Victor J. Gold, FEDERAL PRAC. & PROC. §§ 6301–02 (1997). The rule also specifies that in a civil case (other than one involving just compensation under the Fifth Amendment), the expert's compensation is payable "by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs." Rule 706(c)(2). Stevenson's position was that the appointment of an engineering expert was necessary in order to assist the jury in understanding the manufacturing and product evidence that the parties would present, given that the issues raised in the case (including the design and functioning of the printing machine, the dangers presented, the feasibility

---

[1] (...continued)
10 months, until the district court appointed counsel to represent him.

[2] Stevenson also asked for the appointment of a medical expert, but he has abandoned that request on appeal.

of alternative designs, and so on) were beyond the knowledge and understanding of the ordinary layperson. Stevenson added that he lacked the resources to employ his own expert, and he asked the court to tax the cost of engaging such an expert to the defendants. In his reply brief, in response to Windmoeller's argument that Stevenson was really seeking the appointment of an expert to advocate for his own position, Stevenson clarified that he was seeking the appointment of a *neutral* expert.

The district court denied this motion without prejudice and set a deadline for the submission of Windmoeller's anticipated motion for summary judgment.

After Windmoeller filed its summary judgment motion, Stevenson renewed his motion for the appointment of an expert pursuant to Rule 706, again anticipating the need for expert opinion testimony and emphasizing that he was asking for the appointment of a neutral expert. The court once again denied the motion, reasoning that what Stevenson was really asking for was the appointment of an expert to support his own case, rather than a neutral expert to aid the court. The court added that under the Northern District of Illinois' Local Rule 83.40, Stevenson was eligible to seek reimbursement for reasonable expert witness fees and expenses. The court added that "[i]f the Court later determines that it really does need a neutral expert to help evaluate the evidence, it will revisit the issue." The court subsequently entered an order giving Stevenson just over one month to respond to the motion for summary judgment.

Stevenson contends that the month that the court allowed him to respond to the summary judgment motion was insufficient to hire his own expert, allow the defense additional time for discovery related to that expert, and then for Stevenson to file his response to the summary judgment motion. He instead filed his summary judgment response without the support of any expert opinion.

The district court granted summary judgment in favor of Windmoeller. The court reasoned in the first instance that Stevenson had no expert opinion to support his theory of the case as to the condition and design of the printing machine, which was "a specialized piece of industrial equipment that the vast majority of the population has never seen or used," and thus was beyond the knowledge and understanding of the ordinary layperson. Without the support of an expert to identify any respect in which Windmoeller's printing press was defective, thereby rendering it unreasonably dangerous and the proximate cause of the plaintiff's injuries, the court concluded that the factfinder could not find in favor of the plaintiff. *See, e.g.*, *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 440 (7th Cir. 2019) (noting that Illinois courts recognize that product liability actions frequently involve specialized knowledge or expertise outside of a layperson's knowledge and so may require expert testimony). The court went on to hold that apart from the lack of expert testimony, the plaintiff's claims independently failed for lack of other evidence to create a triable issue of fact.

Stevenson appeals, arguing that the district court abused its discretion in denying his Rule 706 motion for the appointment of a neutral expert and that the court's refusal to appoint such

an expert was the determinative factor in the failure of his case at summary judgment.

## II.

In view of the permissive language of Rule 706, we review the district court's decision declining to appoint an expert solely for abuse of discretion. *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022) (per curiam); *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019); *Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997).

The purpose of a court-appointed expert is to assist the court in evaluating the evidence or deciding a fact in issue. *Giles*, 914 F.3d at 1053 (citing *Ledford*, 105 F.3d at 358–59). The court may, for example, invoke the aid of an appointed expert "to resolve the clash of … warring party experts," *Planned Parenthood of Wis., Inc. v. Van Hollen*, 738 F.3d 786, 799 (7th Cir. 2013); *see also In Re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 665 (7th Cir. 2002); *Students of Cal. Sch. for the Blind v. Honig*, 736 F.2d 538, 548–49 (9th Cir. 1984), *cert. granted & j. vacated on other grounds*, 471 U.S. 148, 105 S. Ct. 1820 (1985); *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 1000 (5th Cir. 1976), to help the court evaluate the admissibility of a party's proffered expert opinion, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 148–50, 118 S. Ct. 512, 520–21 (1997) (Breyer, J., concurring), to address ambiguities, confusion, or contradictions within the parties' opinion evidence, *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999), to supply an additional, independent viewpoint when one party has, whether for lack of resources or another reason, omitted to present expert opinion in support of its case,

resulting in an incomplete or inadequate exposition of the issues, Joe S. Cecil & Thomas E. Willging, *Court-Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706*, at 14 (Fed. Judicial Ctr. 1993); 29 Wright & Gold § 6304, at 468, or to supply expert guidance that the parties themselves have neglected to provide on points that are material to the court's decision, *e.g.*, *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016) (noting that district court, in evaluating reasonableness of proposed settlement of class action challenging sufficiency of notices provided to shareholders regarding corporate merger, could have appointed expert to address meaningfulness of supplemental disclosures provided for in settlement); *Ortiz v. Martinez*, 789 F.3d 722, 724 (7th Cir. 2015) (in international custody dispute brought under Hague Convention, district court appointed psychologist to evaluate children for signs of sexual abuse as raised by respondent parent's affirmative defenses); *Redman v. RadioShack Corp.*, 768 F.3d 622, 631 (7th Cir. 2014) (noting that district court, in reviewing merits of proposed "coupon settlement" of consumer class action, could have appointed expert to address consumer response to coupons).

Although the rule permits a party to move for the appointment of an expert, the language of the rule envisions a neutral expert ("[t]he court may appoint any expert that the parties agree on and any of its own choosing"), and it is widely understood that the job of a neutral, court-appointed expert is to serve the interests of the court rather than those of any party. *See Martin*, 34 F.4th at 569; *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016); *Rowe v. Gibson*, 798 F.3d 622, 632 (7th Cir. 2015); *Van Hollen*, 738 F.3d at 798–99; *Jackson v. Pollion*,

733 F.3d 786, 790 (7th Cir. 2013); *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 583 (7th Cir. 2010); *High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d at 665; *see also Hannah v. United States*, 523 F.3d 597, 600 (5th Cir. 2008); *Honig*, 736 F.2d at 549.

Because the neutral expert envisioned by Rule 706 is one who serves the court as opposed to a party, Stevenson's effort to demonstrate an abuse of discretion in the district court's decision not to appoint such an expert encounters a logical obstacle from the outset. Stevenson would have to show, for example, that the court's own consideration of the evidence or the issues presented was hampered by the lack of an independent expert to aid and guide the court in its evaluation of the case. But Stevenson has not made any argument along these lines, and indeed the record does not suggest to us that the court had any difficulty in appreciating the nature of his claims or in resolving the arguments presented in the briefing on Windmoeller's motion for summary judgment. Indeed, the relevant point that the court made in granting the summary judgment motion was that Stevenson's case suffered from the lack of partisan expert opinion to substantiate his claims, not that the court's evaluation was in any way hindered by the lack of a neutral expert's viewpoint.[3]

---

[3] Stevenson points out that Windmoeller itself did not argue, in seeking summary judgment, that the support of an expert was required in order for him to make a prima facie case of product defect. The district court arguably ought to have given the parties notice and an opportunity to respond before granting summary judgment on a ground not argued by the movant. *See* Fed. R. Civ. P. 56(f); *e.g.*, *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 829 (7th Cir. 2015) (citing *Williams v. City of Chicago*, 733 F.3d 749, 755

(continued...)

Stevenson nonetheless postulates that a neutral expert might have helped his case by supplying the court with an independent point of view that could have potentially lent support to Stevenson's theory that the printing press was defective. The key word here is "potentially."

One can only guess as to the impact that a court-appointed expert might have had on Stevenson's own case. Stevenson himself concedes that there is no way to know whether or not a neutral expert would have supported his theory of recovery. That alone makes it impossible for Stevenson to show that he was prejudiced by the district court's decision not to appoint such an expert. Coupled with the fact that a neutral expert is meant to assist the court rather than the parties, speculation about whatever incidental benefit that expert might have lent to Stevenson's case gets him nowhere in a challenge to the district court's refusal to invoke its authority under Rule 706.

---

[3] (...continued)
(7th Cir. 2013)). But, of course, Stevenson himself had anticipated the need for expert opinion in support of his case when he asked the court to appoint an expert pursuant to Rule 706, so the district court's rationale could not have taken him entirely by surprise. Moreover, as framed by Stevenson's briefing, the issue presented in this appeal is not whether it was appropriate in the abstract for the district court to grant summary judgment in Windmoeller's favor for want of expert opinion supporting Stevenson's theory of the case. In other words, Stevenson does not quarrel with the notion that the specialized knowledge of an expert was required. Rather, his argument is that given the necessity of expert opinion to make his case, it was an abuse of discretion for the district court to deny his Rule 706 requests and unfair for the court to then rely on the absence of expert opinion as a basis for entering summary judgment against him.

Certainly a district court, confronted with a summary judgment record that is either devoid of expert opinion altogether or is limited to expert opinion on only one side of the dispute, may exercise its discretion to appoint its own expert as one way to address the gap or the imbalance in the record, particularly if there are issues as to which the court believes it would benefit from an independent viewpoint. *See* 29 Wright & Gold § 6302, at 452 ("Appointment of a court expert … may be justified where the parties entirely fail to present expert testimony or only some parties present such testimony, thus depriving the trier of fact of a balanced view of the issues."); § 6304, at 468 ("Th[e] judicial encroachment upon adversary powers [exemplified by appointing a neutral expert] is justified because it is a means of compensating for weaknesses in the adversary system that can undermine accurate factfinding."); *e.g.*, *Norwood v. Zhang*, 2013 WL 5162202, at *6 (N.D. Ill. Sept. 13, 2013) (granting prisoner's request for appointment of expert pursuant to Rule 706 in case alleging that health care providers committed malpractice and were deliberately indifferent to his serious medical condition); *but see also Martin*, 34 F.4th at 570 n.2 (noting that "caution is especially warranted" when party seeks appointment of expert under Rule 706 to fill hole in its own case, and that court should consider, *inter alia*, "whether appointing such an expert may undermine the court's neutrality"). But the court was under no obligation to do so here, particularly when Stevenson has been unable to identify any respect in which the court's own analysis was hampered by the lack of a neutral expert.

In the end, only an advocate expert could have filled the gap that the district court cited in Stevenson's case, and there

were means available to Stevenson and his counsel to engage such an expert. We can certainly accept as true Stevenson's representation that he lacked the resources to pay for an expert—and his additional assertion that his court-appointed, pro bono counsel should not have been required to advance the costs of such an expert—but as the district court pointed out, Stevenson could have asked the court to pre-authorize the payment for such an expert from a district court fund under Local Rule 83.40. In relevant part, the rule provides:

> Any party for whom counsel has been recruited by the Court pursuant to LR 83.36 and has filed an appearance on behalf of the party shall bear expenses of the litigation to the extent reasonably feasible in light of the party's financial condition. Such expenses shall include, but not be limited to discovery expenses, subpoena and witness fees, and transcript expenses. If the party is unable to pay the expenses of litigation, recruited counsel may advance part or all of the payment of any such expenses without requiring that the party remain ultimately liable for such expenses, except out of the proceeds of any recovery. The assigned attorney or firm is not required to advance the payment of such expenses.

N.D. Ill. Local Rule 83.40(a).

In turn, District Court Fund Regulation 4G, of the Regulations Governing the Prepayment and Reimbursement of Expenses in Pro Bono Cases, expressly provides that "[r]easonable costs for expert services, other than interpreters, not

otherwise avoided, waived, or recoverable, may be reimbursed from the District Court Fund … ." By the terms of the local rule, counsel has the option of either advancing the expense of hiring an expert and then seeking reimbursement from the court fund at a later date or seeking pre-payment of such an expense. Rule 83.40(b). In his reply brief, Stevenson notes that, given the likely cost of hiring an expert, prior court approval of the expense surely would have been required. *See* District Court Fund Regulations 3G, 4G. He is almost certainly correct in that regard. But he does not explain why he could not have obtained quotes from one or more prospective experts and asked the district court to approve the cost in advance, so that his counsel was not at risk of incurring substantial costs that might not be reimbursed later. Given the option of employing an expert at the expense of the district court fund, we cannot see why Stevenson was not obliged to at least try to engage an expert of his own and seek authorization for the expert to be compensated from the district court fund.

All of this would have taken time, of course, and Stevenson, as we have acknowledged, suggests that the one month that the district judge gave him to respond to Windmoeller's summary judgment motion was insufficient for this purpose. But Stevenson could have asked the court for more time as necessary. Likewise, to the extent Stevenson's engagement of an expert might have entitled the defense to take discovery related to his expert's opinions, there is no reason to think that the district judge would not have extended discovery and the summary judgment briefing schedule for that purpose.

Stevenson also complains that although the district judge, in denying his Rule 706 motions, said that he would revisit the

need for a court-appointed expert as necessary in addressing the motion for summary judgment, he ultimately did not do so (at least explicitly). Indeed, the judge went on to grant Windmoeller's summary judgment on the ground that Stevenson needed an expert to support his case, without acknowledging that the court had previously denied Stevenson's request for the appointment of an expert. Stevenson accuses the judge of engaging in a sort of "gotcha" reasoning in this regard. But, again, Stevenson is failing to appreciate the distinction between a court-appointed, neutral expert and an advocate expert engaged by a party to support his own case. Stevenson's case failed at summary judgment because he had no expert opinion to back up his own claims. The case did not fail because the district judge did not have the benefit of a neutral expert, who as far as we know might have supported Windmoeller's case or neither party's case, as opposed to Stevenson's case. On summary judgment, it was Stevenson's burden, not the court's, to present evidence—including, as necessary, evidence in the form of expert opinion—demonstrating the existence of a dispute of material fact. The court did not have an obligation under Rule 706 to appoint an expert to help Stevenson for that purpose. *See Hannah*, 523 F.3d at 600. And, in view of the fact that the court had already made this clear to Stevenson in its prior order denying his second request for the appointment of an expert, the court was not required to make the same point yet again in resolving Windmoeller's motion for summary judgment.

We note that the district court, in granting Windmoeller's motion for summary judgment, found that even apart from Stevenson's lack of expert testimony to support his case,

Windmoeller was entitled to summary judgment on other grounds. Stevenson argues on appeal that those additional grounds cannot be separated from his own lack of expert testimony. We can accept this assertion as true *arguendo* for present purposes. Given that the court did not abuse its discretion in refusing to appoint a neutral expert, there is no need to consider whether the court properly could have granted summary judgment on those other grounds.

Likewise, we do not need to reach any other arguments on the merits of the parties' respective cases, including Windmoeller's theory as to the post-sale modification of its printing machine.

### III.

The district court did not abuse its discretion in rejecting Stevenson's requests that it appoint an independent expert pursuant to Rule 706.

AFFIRMED